FILED
2014 Aug-12  PM 06:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KAREN PARSONS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | |
| | ) | **2:09-cv-267-AKK** |
| BRIGHTHOUSE NETWORKS, LLC | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**DECLARATION OF JOE R. WHATLEY, JR. IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT AND APPROVAL
OF FORM AND CONTENT OF NOTICE TO CLASS MEMBERS**

I, Joe R. Whatley, Jr., hereby declare as follows:

1.     I am a member of the law firm of Whatley Kallas LLP, and serve as counsel to the Plaintiff in the above-captioned matter (the "Action").

2.     I respectfully submit this Declaration in support of the Joint Motion of Plaintiff and Defendant Bright House Networks, Inc. ("BHN" or "Defendant") for an Order:  (1) preliminarily approving the Settlement as set forth in the settlement agreement entered into by the Parties on August 12, 2014, and attached hereto as Exhibit A to the Joint Motion (the "Settlement Agreement"), (2) certifying the

Settlement Class (as defined in the Memorandum in Support of Joint Motion for Preliminary Approval of Class Settlement and Approval of Form and Content of Notice to Class Members, submitted herewith), (3) approving the proposed Notice Program (as set forth in the Memorandum in Support of Joint Motion for Preliminary Approval of Class Settlement and Approval of Form and Content of Notice to Class Members, submitted herewith), and directing that Notice be disseminated to the Settlement Class as proposed therein, (4) setting the Objection Deadline to be 60 days after the Notice Date, (5) scheduling the Final Fairness Hearing for a date 30 days after the Objection Date, and (6) appointing Whatley Kallas, LLP, Wiggins, Childs, Quinn and Pantazis, LLC, and Quinn, Connor, Weaver, Davies & Rouco (together, "Plaintiff's Counsel") as Settlement Class Counsel.

3.     Attached hereto as Exhibit 1 is the firm resume of Whatley Kallas, LLP.

4.     Attached hereto as Exhibit 2 is the firm resume of Wiggins, Childs, Quinn and Pantazis, LLC.

5.     Attached hereto as Exhibit 3 is the firm resume of and Quinn, Connor, Weaver, Davies & Rouco.

6.     Plaintiff's Counsel have substantial experience in handling class actions, other complex litigation, and claims of the type asserted in this Action, as

is reflected in the firm resumes attached hereto as Exhibits 1, 2, and 3. Moreover, after years of litigating this case and others like it, Plaintiff's Counsel are thoroughly familiar with the factual and legal issues involved in this action.

7.    Plaintiff's Counsel have done substantial work to identify and investigate potential claims in the Action, and have refined the allegations through the Complaint. Plaintiff's Counsel have also investigated the allegations made in the Action by interviewing witnesses, conducting depositions, reviewing publicly available information, and reviewing documents obtained from Defendant.

8.    Plaintiff's Counsel have also briefed Defendant's motion to dismiss, and briefed and argued Plaintiff's Motion for Class Certification.

9.     After Plaintiff's motion for class certification was fully briefed and argued in a two-day evidentiary hearing on April 19-20, 2012, the Parties began negotiating a class-wide resolution of the case. The settlement negotiations that led to the proposed settlement were hard-fought, were conducted at arm's length and were non-collusive.

10.    The basic terms of the Settlement Agreement here were negotiated through a back-and-forth exchange between Plaintiff's and BHN's counsel for many months and the mediation efforts of the Honorable Stanley F. Birch, Jr., formerly of the Eleventh Circuit, and Mediator Wayne Thorpe of JAMS.

11.    An initial mediation before Mediator Thorpe was conducted in September, 2012.

12.    When the Parties had reached significant agreement on most but not all of the terms of the Settlement, they agreed to enter into a second mediation before Judge Birch and Mr. Thorpe in May 2014.

13.    On May 9, 2014, the Parties submitted Confidential Pre-Mediation Submissions to the Honorable Stanley F. Birch, Jr., formerly of the Eleventh Circuit, and Mediator Wayne Thorpe, setting forth their respective positions in anticipation of the scheduled mediation before Judge Birch and Mr. Thorpe.

14.    Specifically, Plaintiff sought the opinions of the mediators as to whether the proposed Settlement is fair, reasonable and adequate in light of the other cases that have proceeded related to the same issue, especially *In re: Cox Enterprises*, Case No. 12-ML-2048-C, from the United States District Court for the Western District of Oklahoma; *In re: Time Warner Inc. Set-Top Cable TV Box Antitrust Litig*., Case No. 1:08-md-01995-PKC, from Southern District of New York; *In re: Comcast Corp. Set-Top Cable TV Box Antitrust Litig*., Case No. 2:09-md-02034-AB, from the Eastern District of Pennsylvania; and *Hill v. Coosa Cable Co.,* Civ. No. 411-cv-3654-KOB, from the Northern District of Alabama.

15.    Upon commencement of the mediation, Judge Birch spoke to each side privately, extensively probing for weaknesses in each side's position, stating

his views on the case, and examining the similarities and differences between this case and others, such as *Comcast,* that have effectively been resolved through class settlements, and cases such as *Cox*, which has not.

16.     After the Parties had agreed on relief for the Settlement Class, they then sought the mediators' assistance in resolving the final issue of payment of attorneys' fees and expenses.  After intense negotiations under the guidance of Judge Birch and Mediator Thorpe, the Parties reached agreement on the principal terms of the Settlement, and memorialized them in a term sheet.  Judge Birch expressly stated to both Parties that he believed the settlement to be fair, reasonable and adequate.

17.     Significantly, it was only after extensive questioning of the Parties' counsel by Judge Birch leading up to and during the final mediation session over which he presided that he finally gave his imprimatur to the Settlement, once he was fully satisfied that the Settlement is fair, reasonable and adequate to putative class members.  Judge Birch expressly recognized that the prospective injunctive relief is especially significant in addressing the allegations in the complaint.

18.     The Parties have agreed to the form of the Mailed Notice (to be included in monthly bills to current customers of BHN), as set forth in Exhibit 4 hereto.

19.     The Parties have agreed to the form of the Publication Notice, as set forth in Exhibit 5 hereto.

20.     The Parties have agreed to the form of the Long-Form Notice, as set forth in Exhibit 6 hereto.

21.     The Parties have agreed to the form of the Claim Form for former customers of BHN, as set forth in Exhibit 7 hereto.

22.     I hereby certify, as an officer of the Court, that I have affirmatively and diligently sought to submit to the Court only those documents, factual allegations, and arguments that are material to the issues to be resolved in the motion, that careful consideration has been given to the contents of all submissions to ensure that the submissions do not include vague language, an overly broad citation of evidence, or misstatements of the law, and that the Joint Motion is not frivolous.

I declare, under penalty of perjury pursuant to the laws of the United States, that the foregoing is true.

Executed this 12th day of August, 2014.

_____

Joe R. Whatley, Jr.

# EXHIBIT 1



## Introduction

Whatley Kallas, LLP, is comprised of a nationally recognized group of attorneys with a long history of representation of plaintiffs and plaintiff classes in complex litigation, especially in the consumer and healthcare area.

Whatley Kallas operates offices in San Diego, Los Angeles, and San Francisco, California, as well as in Atlanta, Birmingham, New York, Boston, and Aspen, Colorado.

The attorneys of Whatley Kallas have gained a national reputation for their aggressive litigation style and quality legal work, particularly in their handling of complex cases. Collectively, the attorney group has tried numerous cases to verdict and has recovered billions of dollars in cash and significant corporate reforms for their clients

The lawyers of Whatley Kallas have been repeatedly recognized in legal publications, such as *The National Law Journal* and *American Lawyer*, by their peers.

The lawyers of Whatley Kallas, many of whom were formerly with Whatley Drake & Kallas, will continue to seek leadership roles in significant complex class action and derivative litigation, including consumer fraud and abuse litigation as well as other areas of litigation.  These lawyers participate in class actions and complex cases across the United States, effecting meaningful change through settlements and verdicts for classes of people, businesses and pension funds.

Whatley Kallas's partners have served as co-lead counsel in numerous high profile class actions that have recovered billions of dollars for class members, and have achieved significant corporate reforms.  Examples of recent cases in which the partners served in a leadership role and were extensively involved in the litigation and negotiation of settlements include: In re: Managed Care Litigation (resulting in billions of dollars in cash and value to a class of 900,000 physicians throughout the United States); In re Insurance Brokerage Antitrust Litigation (settlements with defendants Zurich Insurance Company and Arthur J. Gallagher on behalf of commercial policyholders for in excess of $130 million); In re: Qwest Savings and Retirement Plan ERISA Litigation (approximately $37.5 million); In re: HealthSouth Corporation Securities Litigation ($445 million); In re Denney v. Jenkens & Gilchrist ($81.6 million settlement on behalf of former clients of Jenkens & Gilchrist in connection with illegal tax shelters); In re MedPartners Securities Litigation ($65 million); In re Mattel Lead Paint Contaminated Toy Ltigation (tens of million dollars in value to the class).

**The firm's lawyers have gained a national reputation for their aggressive litigation style and their quality legal work. A significant aspect of the Firm's resources is its ability to try a complex case.** One of the Firm's founding partners, Joe R. Whatley, Jr., is an experienced trial lawyer and is one of the few lawyers representing plaintiffs in complex class action litigation who has tried a class action case to verdict.  He won a $1.28 billion jury verdict on behalf of a class of cattle ranchers against Tyson Fresh Meats, Inc. in Pickett v. Tyson Fresh Meats, Inc., No. 96-A-1103-N (M.D. Ala.). Mr. Whatley also won what was at the time the largest wrongful death verdict in Louisiana history in Dunn v. Consolidated Rail Corp., 890 F. Supp. 1262 (M.D.La. 1995).  Mr. Whatley's experience in this regard has made him a highly sought after member of plaintiffs' leadership groups in numerous complex and multidistrict litigations.

The firm's partners have also gained a national reputation for their consistent dedication to the interests of their clients by achieving results which include both compensation to victims of wrongdoing and significant industry reforms.

## Firm Litigation

## Consumer Class Litigation

Whatley Kallas lawyers will continue with representation of consumers in class action cases.  Cases in which lawyers of the firm have participated include:

**Spencer v. Shell Oil.**  Homeowner suit in connection with polybutylene plumbing throughout the United States in this action in the Circuit Court of Greene County, Alabama. A settlement of approximately $1 billion to repair and replace leaking pipes and fittings for homeowners was obtained.

**In re Mattel, Inc. Toy Lead Paint Products Liability Litigation, MDL No. 1897.**  Class of consumers of toys recalled due to their lead content or that were defectively designed with magnets which could come loose and potentially injure children manufactured and sold by Mattel and Fisher Price.  A settlement providing for refunds of the purchase price of the toys and reimbursement for prior lead testing was obtained for class members and approved by the United States District Court for the Central District of California.

**Pineda v. Vitamin Shoppe.**  Class of purchasers of Vitamin Shoppe's "Especially for Women" vitamins.  The complaint alleged that testing revealed some of these vitamins were contaminated by lead and/or contained less calcium than the label indicated. Vitamin Shoppe denied all wrongdoing. A settlement was obtained on behalf of the class, who received refunds of 100% of the value of the purchase price of the products or 125% of the purchase price if they choose store credit, which was approved by the Superior Court for Bergen County, New Jersey.

**White v. Bed Bath and Beyond.** A class of purchasers of bedding and linen products from Bed Bath and Beyond. Bed Bath and Beyond inflated the thread count of certain two-ply and multi-ply linens and other bedding products by counting threads in a manner which the Federal Trade

Commission has ruled is deceptive to consumers.  A settlement was reached with Bed Bath and Beyond, which provided refunds or gift cards to purchasers of these bedding products, which was approved by the United States District Court for the District of New Jersey.

## Securities, Derivative and 401(k) Litigation

The Partners of Whatley Kallas have been appointed to leadership positions in numerous securities and 401(k) class actions and derivative litigation.  Examples of cases in which the firm's lawyers currently hold or have held a leadership position include, among others, the following:

**In re HealthSouth Corporation Securities Litigation**. Liaison Counsel in this securities class action pending in the United States District Court for the Northern District of Alabama. Settlement of more than $670 million has been obtained for class members.

**Hildebrand v. W Holding Company.** Co-Lead Counsel in this securities class action against W Holding Company, WesternBank Puerto Rico and certain individuals pending in the United Stated District Court for the District of Puerto Rico.

**In re MedPartners Securities Litigation**. Liaison Counsel in this action filed in Circuit Court of Jefferson County, Alabama on behalf of a class of shareholders against MedPartners.  A settlement of $65 million was obtained and approved by the court.

**In re Qwest Savings and Retirement Plan ERISA Litigation**. Joe R. Whatley, Jr. was appointed Co-Lead Counsel in this class action filed on behalf of all participants and beneficiaries of Qwest's 401(k) retirement plan. The suit alleged that various fiduciaries of the plan failed to properly exercise their duties as required under ERISA.  A settlement of approximately $37.5 million was obtained and approved by the court.

**In re Rankin v. Conaway (Kmart)**.  Lead Counsel in this class action on behalf of participants and beneficiaries of Kmart's Retirement Savings Plans who lost money when Kmart filed for bankruptcy. The suit alleged that various fiduciaries of the Plan failed to properly exercise their duties as required under ERISA.  WD&K obtained a settlement of $11.75 million that was approved by the court.

**In re Xcel Energy**. Co-Lead Counsel on behalf of participants and beneficiaries of Xcel's 401(k) Retirement Plan.  A settlement of $8 million was obtained and approved by the court.

**In re Broadwing, Inc. ERISA Litigation**. Co-Lead Counsel in this class action brought on behalf of the participants and beneficiaries of Cincinnati Bell, Inc. Savings and Securities Plan, the Broadwing Retirement Savings Plan, and the Plans themselves, to remedy defendant's breaches of fiduciary duty under ERISA.  A settlement of $11 million was obtained and approved by the court.

**McPhail, et al. v. First Command, et al.**  Co-Lead Counsel representing a class of military and former military families that was defrauded by First Command.  First Command and its officers

are being sued because they sold to military families unsuitable financial products that contained, among other things, a 50% sales load in the first year of the product. Class certification was won and that decision was upheld by the Ninth Circuit Court of Appeals. First Command appealed the decision to the Supreme Court of the United States and cert was denied. A settlement of $12 million obtained for class members.

## Insurance and Healthcare Litigation

Whatley Kallas is a leader in complex litigation against the largest insurance, brokerage and managed care companies in the world. The lawyers at Whatley Kallas have been appointed to leadership positions in the following cases, among others:

**Love v. Blue Cross Blue Shield Association,** Co-Lead Counsel in this action pending in the United States District Court for the Southern District of Florida. Settlements have been reached with approximately ninety percent (90%) of the defendants. The settlements provide for in excess of $130 million of monetary benefits and practice change relief valued in excess of two billion dollars.

**In re Managed Care Litigation, MDL No. 1334.** Member of the Plaintiffs' Steering Committee and represents a class of physicians against nine of the largest managed case providers in the United States including AETNA, CIGNA, United, Healthnet, Humana, PacifiCare, Prudential and WellPoint. The suit alleged that these defendants engaged in a civil conspiracy in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") to wrongfully and fraudulently pay doctors less than the amounts to which they were entitled. Settlements were reached with AETNA, CIGNA, Healthnet, Humana, Prudential and Wellpoint consisting of monetary relief, and significant business practice changes valued in the billions of dollars have been obtained and approved by the court.

**In re Monumental Life Insurance Company, Industrial Life Insurance Litigation**. Member of the Plaintiffs' Steering Committee in this action pending in the United States District Court for the Eastern District of Louisiana seeking redress for discriminatory practices of many major insurance companies with respect to the sale of life insurance products to minorities. Settlements of approximately $500 million dollars have been obtained in these cases and approved by the court.

**Feller v. Blue Cross of California.** Class Action successfully brought to remedy the practice of trapping members in a closed plan subject to dramatically increasing premiums. Under the settlement, among other relief, class members are allowed to switch plans without underwriting until 2014, at which time preexisting conditions will no longer serve as a basis for denying health insurance.

## Environmental Litigation

Representation of thousands of individuals against the manufacturers of toxic substances released into the environment and a significant role in several nationally prominent environmental litigations including the following:

**In re Allen v. ALDOT.**  Represented residential property owners in three neighborhoods in Montgomery, Alabama harmed by the Alabama Department of Transportation's release of the chemical TCE into the groundwater of a 600-acre area affecting the property of 1200 homeowners. A settlement of $5.5 million was obtained.

## Antitrust Litigation

Lawyers of Whatley Kallas have significant experience in antitrust litigation, including, but not limited to, the following:

**In re Insurance Brokerage Antitrust Litigation, MDL No. 1663.**  Co-Lead Counsel and represent a putative class of purchasers of commercial and employer benefit insurance against many of the largest insurance companies and brokers in the country relating to these companies' alleged participation in a conspiracy to manipulate the markets for insurance. To date, settlements with two of the defendants, Zurich Insurance Company and Arthur J. Gallagher, have been reached for approximately $130 million.

**In re Lorazepam and Clorazepate Antitrust Litigation.**  Third Party Payor Lead Class Counsel  in this antitrust action which was transferred by order of the Judicial Panel for Multi-District Litigation to the United States District Court for the District of Columbia.  Settlements of over $100 million were obtained.

**Pickett, et al. v. Tyson Fresh Meats, Inc.**  Co-Lead Counsel in representing a class of cattle ranchers against the major beef packers and producers in the country for conspiring to depress the price of beef on the cash market.  In addition to serving in a leadership position in this action, Joe. R. Whatley served as trial counsel in the Middle District of Alabama for the plaintiff class and the jury returned a verdict of $1.28 billion for the class of ranchers and cattle producers.

**In re Pharmacy Benefit Managers Antitrust Litigation.**  Co-Lead Counsel in a nationwide class action that seeks to ensure patients' access to their selected pharmacists and that independent pharmacists will be able to provide quality care to the people who seek over 1.3 billion prescriptions from them each year. The suit alleges that Pharmacy Benefit Managers conspired to and engaged in horizontal price fixing of the reimbursement rates paid to independent pharmacies.

**Waterbury Hospital v. U.S. Foodservice.**  Co-Lead Counsel and represents customers in a case involving a scheme whereby USF, the second largest food distributor in the U.S., fraudulently inflated the prices it charged to its cost-plus customers.  USF's customers were charged, pursuant to

cost-plus agreements, inflated prices that represented the cost of products plus a kickback to their suppliers.

**In Re Puerto Rican Cabotage Antitrust Litigation**:  Co-lead Counsel and represents purchasers in a class action alleging that Defendants conspired to fix the prices of shipping services to and from Puerto Rico.  The settlement in cash and non-cash relief exceeded $100 million in value.

## Oil and Gas Royalty

Representation of oil and gas owners in litigation against oil companies.  Settlements have been reached with Exxon, Torch Energy and LL&E, Inc.  Relief of more than $7.5 million for royalty owners was obtained.

## Other Complex Class Action Litigation

Other complex class action cases with which lawyers of the firm have been involved include:

**Tax Shelter Litigation.** Representation of hundreds individuals who were sold defective tax avoidance strategies by some of the nation's largest law firms, accounting groups and investment banks.  The litigation resulted in a class settlement of $81 million with Jenkens & Gilchrist and numerous individual and aggregate settlements valued at several hundred million dollars**.**

## Labor & Employment Litigation

Representation of participants in employer-sponsored benefit plans including defined benefit pension plans and 401(k) plans fighting to recover individual benefits and damages to the plans themselves.

**Jackson v. City of Birmingham Schools (Title IX)**.  Representation of Alabama high school basketball coach fired after he complained that the girls on his team were not treated as well as boys.  The coach won a landmark Supreme Court ruling under Title IX, the law that guarantees equal access and equal facilities for men in women in sports.  The case was litigated on remand and obtained a settlement that includes a city school board promise of equal facilities and the hiring of a Title IX coordinator to assure compliance.

**Tyson Foods**.  Multi-million dollar settlement arising out of sexual harassment claims at a Tyson Foods plant in Alabama. In addition to the money, the Court ordered detailed injunctive relieve and appointed a court monitor to cure the wide-spread sexual harassment problem.

**Ward v. Albertson's, Save-on, and Lucky Stores.**  Class of defendants' former employees who alleged that defendants failed to pay them their wages in accordance with California's waiting time statutes.  Under California's Labor Code, employers must pay involuntarily terminated employees immediately upon termination, and voluntarily severed employees within 72 hours of their giving

notice of termination.  Although defendants vigorously disputed these allegations, a settlement of $18.5 million was obtained.

## Biographies

### Joe R. Whatley, Jr.

Joe Whatley grew up in Monroeville, Alabama, the setting for *To Kill A Mockingbird*. Mr. Whatley is one of the few lawyers in the country to have argued before the United States Supreme Court as well as tried class actions to jury verdict for plaintiffs as well as defendants. He has a wide-ranging, national practice. He has argued cases before a majority of the Circuit Courts of Appeals in the country and tried cases in a number of different State and District Courts, before Judges and juries.

He is a graduate of Harvard College (A.B., cum laude, 1975), and the University of Alabama School of Law (J.D., 1978). Mr. Whatley is a member of the Bar in the States of Alabama, Texas, Colorado and New York, and is admitted to practice before the United States Supreme Court, the United States District Court for the Middle, Southern and Northern Districts of Alabama, the Southern and Eastern Districts of New York, the Southern District of Texas, the District of Colorado, as well as the United States Court of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits. After graduating from the University of Alabama Law School, Mr. Whatley served as a law clerk to the Honorable Frank H. McFadden, who was then Chief United States District Judge for the Northern District of Alabama (1978-1979). Mr. Whatley is a member of the American Bar Association (Member, Sections on: Labor and Employment Law; Litigation), a member and past President (1990-1991) of the Birmingham Federal Bar Association, and a member and past President (1990-1991) of the Labor and Employment Law Section of the Alabama State Bar.

For more than a decade Mr. Whatley has focused his practice on healthcare and antitrust cases. His healthcare cases have primarily been against health insurance companies.  He was one of the most active lawyers in Court proceedings in *In re Managed Care Litigation* and in *Thomas/Love v. Blue Cross*, and he was one of the principal negotiators of the path-breaking settlements in both of those proceedings that resulted in billions of dollars in monetary relief and business practice changes in the managed care industry.  He represents providers of healthcare of all types in disputes with health insurance companies.  He has represented and currently represents doctors and ancillary providers in a whole range of issues related to their reimbursement.  He also currently represents ambulatory surgery centers in antitrust claims against health insurance companies in multiple markets.  He has represented hospitals in arbitration against health insurance companies.

He is also an experienced trial lawyer, having tried numerous cases, including class actions, to verdict. For example, Mr. Whatley won a $1.28 billion jury verdict on behalf of a class of cattle ranchers against Tyson Fresh Meats, Inc. in *Pickett v. Tyson Fresh Meats, Inc.*, No. 96-A-1103-N (M.D. Ala.), and won what was at the time the largest wrongful death verdict in Louisiana history in *Dunn v. Consolidated Rail Corp.*, 890 F. Supp. 1262 (M.D. La. 1995). Mr. Whatley has recovered

billions of dollars in monetary relief and business practice changes in litigations against the managed care industry.

Mr. Whatley has been recognized by his peers as one of the top lawyers in the country. He has been admitted as a Fellow to the American College of Trial Lawyers. In 2011, he was selected as one of the top 100 lawyers in the New York Metropolitan Area. He has been selected each year for decades as one of the Best Lawyers in Alabama.
E-MAIL: jwhatley@whatleykallas.com

**Edith M. Kallas**
Ms. Kallas was born in New York, New York. Ms. Kallas graduated from the Juilliard School in 1984 with a B.M. in Music Performance and from the Fashion Institute of Technology with an A.A.S., summa cum laude. She is a 1987 graduate of the Benjamin N. Cardozo School of Law, where she was a member of the Moot Court Board. Ms. Kallas is admitted to the New York State Bar, the United States Supreme Court, the United States District Court for the Southern and Eastern Districts of New York and the United States Courts of Appeal for the Second, Third, Sixth, Ninth and Eleventh Circuits. She is also a member of the American Bar Association (Health Law Section), Association of the Bar of the City of New York, the New York State Bar Association, the New York County Lawyers' Association and the American Society of Medical Association Counsel.

In April of 2004, Ms. Kallas was honored by thirteen State and County Medical Societies, who presented her with an award "For the Success Attained in her Relentless Pursuit of Justice for the Physicians of America and their Patients." Also in 2004, Ms. Kallas was named by the New York County Lawyers' Association as one of the "Outstanding Women of the Bar." In 2005, the National Law Journal featured Ms. Kallas in their UP CLOSE section in an article entitled, "HMO Settlement: A Fairer Deal for Doctors." The National Law Journal also featured Ms Kallas and her partner Joe Whatley in an article entitled "Case Puts Doctors Back in the Driver's Seat" in 2007. In 2011, the National Law Journal recognized Ms. Kallas in a feature article entitled, "In Insurance Fights, a Healthy Return for Firm – With Wellpoint Case." Most recently, in February 2013, Ms. Kallas was highlighted in the *Big Suits* section of the American Lawyer Magazine in connection with the In re Aetna UCR Litigation settlement.

Ms. Kallas concentrates her practice in the areas of healthcare and insurance litigation. She represents healthcare providers and members of the organized medicine community including physicians, ancillary providers, ambulatory surgical centers, durable medical equipment providers, as well as numerous national, state and county medical societies throughout the country. Her medical association clients include the American Medical Association, Medical Society of the State of New York, Connecticut State Medical Society, Medical Society of New Jersey, California Medical Association, Florida Medical Association, Texas Medical Association, South Carolina Medical Association, Tennessee Medical Association, Northern Virginia Medical Societies, North Carolina Medical Society, Nebraska Medical Association, Washington State Medical Association, Hawaii Medical Association, Alaska State Medical Association, Rhode Island Medical Society, Vermont Medical Society, New Hampshire Medical Society, El Paso County Medical Society, and the California Chiropractic Association.

8

Ms. Kallas represents healthcare providers in litigation, arbitration, negotiations, and contracting, and provides day-to-day consultation and advocacy services in connection with a broad range of issues facing providers today. She has also represented healthcare providers and medical associations in numerous class actions pending in federal and state courts (including representation of a certified class of approximately 900,000 physicians throughout the United States). Ms. Kallas served as Co-Lead Counsel in the *Love et al. v. Blue Cross Blue Shield Association et al.* pending in the United States District Court for the Southern District of Florida; on the Steering Committee in the *In re Managed Care* action; as Co-Lead Counsel and a member of the Executive Committee in the UCR Class Actions against Wellpoint (pending in the C.D. Cal.), CIGNA and Aetna (both pending in the D.N.J); as Lead Counsel in the *Scher v. Oxford* physician class arbitration; and has served as lead counsel in numerous state court healthcare actions. Ms. Kallas is also Co-Lead Counsel in the *In re Insurance Brokerage Antitrust Litigation* pending in the District of New Jersey against major brokerage and insurance companies on behalf of classes of businesses and employees who purchased insurance, including healthcare insurance.  She was one of the principal negotiators of settlements with Aetna, Cigna, Healthnet, Prudential, Humana, Wellpoint and 90% of all the Blue Cross entities in the country on behalf of nationwide classes of physicians and medical societies that have resulted in billions of dollars of practice reforms and monetary relief to physicians throughout the country. The settlements have resulted in significant business practice changes that are viewed as setting a new standard in the healthcare industry in the best interests of physicians and their patients.  Ms. Kallas has also given legislative testimony regarding issues affecting physicians and successfully handled, on a pro bono basis, an appeal for a patient requiring lifesaving treatment.

Ms. Kallas is the co-author of "Gender Bias and the Treatment of Women As Advocates," Women in Law 1998. Ms. Kallas has also participated as a Faculty Member and/or Speaker in connection with the following presentations: "Class Action Healthcare Litigation," ALI-ABA Healthcare Law and Litigation Conference, 1999; "Class Actions: HMOs and Healthcare Providers Under Attack," ALI-ABA Life and Health Insurance Litigation Conference, 2000; "Providers (Suits by Doctors and Hospital Class Actions)," ALI-ABA Healthcare Law and Litigation Conference, 2000; "The Application of ERISA and RICO Theories in the Age of Managed Care," The Judges and Lawyers Breast Cancer Alert, 2000; "Healthcare Litigation: What You Need to Know After Pegram," Practicing Law Institute, 2000; "Provider Suits by Doctors and Hospitals v. HMOs," ALI-ABA Healthcare Law and Litigation Conference, 2001; The Joint Seminar Session of the School of Allied Health and Health Law Section at Quinnipiac University School of Law, 2001; The CLE Conference presented by the American Society of Medical Association Counsel, 2002; "The Unique Role of The Medical Society Effectively Litigating for Change in the Healthcare Arena," American Academy of Otolaryngology Presidential Board of Governors Special Seminar 2002; "The Future of Class Action Litigation in America," The CLE Conference presented by the American Bar Association, 2005; "Gender Bias in Litigation and the Trend Toward Diversity in Multi-District Litigation Proceedings," Mass Torts and Class Actions CLE Summit (Whatley Drake LLC Continuing Legal Education Conference) 2006 and 2007; "Arbitration Issues in Class Action Suits: How *Bazzle* Changed the Landscape of Class Arbitration," Whatley Drake & Kallas LLC Continuing Legal Education Conference 2007, ASMAC 2008; "Forum Shopping: Defendants Do It Too," Symposium on the Class Action Fairness Act and published in the Newsletter of the ABA

9

Tort Trial and Insurance Practice Section Business Litigation Committee, Winter 2007; "Ingenix Litigation Update," ASMAC 2010; "Negotiating Skills for Career Advancement," Connecticut State Medical Society Professional Development Conference for Women in Medicine CME, May 2010; and "National Trends in Provider Contracting," Connecticut State Medical Society, "Managed Care Contracting: Anatomy of a Contract" Seminar, April 2012; "Avoiding Traps in Alternative Dispute Resolution," American Medical Association Webinar, February 2013; "Contract Negotiation Skills," Connecticut State Medical Society Professional Development Conference for Women in Medicine CME.
E-MAIL: ekallas@whatleykallas.com

**Alan Mansfield**
Alan M. Mansfield has practiced primarily in the area of national consumer class action and public interest litigation since 1991, focusing on healthcare, telecommunications, and consumer privacy issues. His clients have included such public interest organizations as the California Medical Association, Consumer Watchdog, and the Privacy Rights Clearinghouse.

Mr. Mansfield has been involved in numerous significant healthcare matters, including a class action against Anthem Blue Cross for improperly closing certain health plans which resulted in a settlement requiring defendant to limit plan rate increases and requiring any plan changes to be without medical underwriting for several years (*Feller v. Anthem Blue Cross*, Ventura County Superior Court Case No. 56-2010-00368587-CU-BT-VTA); and a class action representing a number of California pharmacists seeking to require Pharmacy Benefits Managers to provide data required under state law, obtaining a significant decision from the Ninth Circuit interpreting the scope of the First Amendment as applied to California pharmacists' claims under California law (*Beeman v. Anthem Prescription*, 2011 U.S. App. LEXIS 14687 (9th Cir., July 19, 2011, *en banc* review granted). He was also involved in the "Joe Camel" teen smoking case, *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057.

As part of his commitment to public interest litigation, Mr. Mansfield was one of the lead counsel in *Garrett v. City of Escondido*, 465 F.Supp. 2d 1043 (S.D. Cal. 2006), in the U.S. District Court for the Southern District of California, which successfully challenged the legality of the City of Escondido's immigration landlord-tenant enforcement ordinance, resulting in one of the first decisions addressing the constitutionality of local ordinances or state laws addressing immigration issues. Based on that and other work in the community performed by both him and the previous firm for which he was the managing partner (Rosner & Mansfield LLP), he and his firm was awarded the 2007 Public Service by a Law Firm Award by the San Diego County Bar Association. He also recently assisted the ACLU in obtaining a significant First Amendment victory regarding the improper seizure by the U.S. Government of property belonging to members of the Mongols Motorcycle Club (*Rivera v. Melson*, No. 2:09-cv-02435 DOC (JCx)(C.D. Cal.)).

Highlights from other recent successful actions where he was appointed as one of the lead class counsel include a class action against American Honda for misrepresenting gas mileage on Honda Civic Hybrids, resulting in a settlement valued at over $400 million (*Lockabey v. American Honda*, S.D. Sup. Ct. Case No. Case No. 37-2010-00087755-CU-BT-CTL); and an action involving the

unauthorized billing of consumers for overdraft fees on checking and debit account, resulting in the creation of a $35 million common fund and significant *cy pres* contributions to several non-profit organizations (*Closson v. Bank of America*, San Francisco Superior Court Case No. CGC 04436877). He also prevailed, after a two-week long class action arbitration in January 2009, on behalf of a class of senior citizens residing at a senior living community who were charged entrance fees in violation of California's landlord-tenant laws, obtaining significant relief for the benefit of the class members and contributions for Alzheimer's Disease research (*VanPelt v. SRG*).

Mr. Mansfield was also one of the lead counsel in a class action against Sprint Communications for charging customers improper telephone fees for data plan communication, resulting in a settlement that fully refunded the vast majority of such charges (*Taylor v. Sprint Communications*, Case No. C07-CV-2231-W (RJB)); a class action involving billing customers for previously promised airtime, resulting in a class action settlement that gave over 1 million customers the ability to claim full reimbursement for the uncredited airtime (*Nelson v. Virgin Mobile*, Case No. 05-CV-1594-AJB); a case challenging Sprint's failure to provide a cancellation window when it imposed certain additional fees against customers in July 2003, resulting in a class-wide settlement returning Early Termination Fees that had been charged to consumers, as well as improving certain disclosure practices (*UCAN v. Sprint Spectrum LP*, San Diego Superior Court Case No. GIC 814461); and *Maycumber v. PowerNet Global Telecommunications*, Case No. 06-cv-1773-H (RBB) (S.D. Cal.), which challenged the practice of charging a "Network Access Charge" as a tax when it was not, resulting in a significant refund of such charges. Mr. Mansfield also represented the public interest group UCAN in an action before the California Public Utilities Commission involving improper billing for Early Termination Fees, resulting in a refund of over $18 million in fees to over 100,000 former Cingular Wireless customers (*In Re Cingular Wireless*, CPUC Case No. I.02-06-003), as well as an action challenging AT&T California's practice of terminating 911-only service to California residents in violation of the Public Utilities Code, resulting in a multi-million dollar fine and an order requiring significant practice changes (*UCAN v. SBC California*, CPUC Case No. C.05-11-011).

Mr. Mansfield received his B.S. degree, *cum laude*, in Business Administration - Finance from California Polytechnic State University, San Luis Obispo in 1983 and his *Juris Doctorate* degree from the University of Denver School of Law in 1986. He is admitted to the Bar of the State of California, to the United States District Courts for all Districts of California and to the Third, Fifth, Ninth and Tenth Circuit Courts of Appeal.
**E-MAIL:** **amansfield@whatleykallas.com**

**Patrick J. Sheehan**
Mr. Sheehan heads the firm's Boston, Massachusetts office. Mr. Sheehan's practice focuses on consumer protection, health care law, insurance law, issues relating to information security and identity theft and other complex litigation. As part of his practice, Mr. Sheehan represents businesses, professional associations, professionals, consumers and other individuals in class actions and other litigation pending throughout the country.

Mr. Sheehan has represented physicians and medical associations in class actions brought in numerous federal and state courts.  Mr. Sheehan currently represents plaintiff physicians and medical societies in the *In Re Managed Care Litigation* and *Love v. Blue Cross Blue Shield et al.*, pending in the United States District Court for the Southern District of Florida, which have already led to landmark settlements resulting in billions of dollars worth of managed care reforms and monetary relief for physicians across the country.  Mr. Sheehan has also represented physicians and state medical societies in state court actions and arbitrations in jurisdictions across the nation.

Mr. Sheehan's current consumer class actions include *In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation*, pending in the Eastern District of Missouri, which alleges that Aurora Dairy and various retailers marketed and sold Aurora Dairy milk as "organic" even though it failed to comply with federal organic standards in numerous respects.  Mr. Sheehan also represents consumers in the *In re Bisphenol-A Polycarbonate Plastic Products Liability Litigation*, brought against a number of the leading manufacturers of plastic bottles for misrepresenting and failing to disclose the safety risks linked to the chemical compound Bisphenol-A used to make their products.

Mr. Sheehan is also involved in *In re Insurance Brokerage Antitrust Litigation*, filed in the District of New Jersey against certain of the largest insurance companies and insurance brokers in the country in connection with their use of undisclosed contingent commissions.  To date, this litigation has led to settlements totaling tens of millions of dollars.

Mr. Sheehan regularly contributes to legal publications and continuing legal education programs. He also frequently volunteers his time on a pro bono basis.  Mr. Sheehan is an active participant in the Health Law Advocates Pro Bono Legal Network, through which he provides legal assistance to individuals seeking access to health care.  Mr. Sheehan also served as a volunteer attorney for Trial Lawyers Care, the largest pro bono legal program in history, through which he provided legal services to individuals and families who sought compensation under the September 11th Compensation Fund.

Mr. Sheehan is a graduate of the College of the Holy Cross (B.A., 1993) and Northeastern University School of Law (J.D., 1997), where he was an editor of the NU Forum. He is a member of the American Bar Association, the American Association for Justice, the Massachusetts Bar Association, the Massachusetts Academy of Trial Attorneys and the Boston Bar Association and serves on the Board of Directors of the Holy Cross Lawyers Association.  He is a member of the Massachusetts and New York Bars and is admitted to practice before the United States District Courts for the District of Massachusetts, the Southern and Eastern Districts of New York, the District of Colorado, the Eastern District of Michigan and the First Circuit Court of Appeals. **E-MAIL: psheehan@whatleykallas.com**

**Ilze C. Thielmann**
Ms. Thielmann practices health care litigation, complex and multi-district litigation.  She is a member of the New York State Bar (1995) and is also admitted to practice before the U.S. District

Courts for the Eastern and Southern Districts of New York. Ms. Thielmann attended Princeton University (A.B., 1988) and obtained her J.D. in 1994 from Columbia University Law School where she was a member of Law Review and Harlan Fiske Stone Scholar.
E-MAIL: ithielmann@whatleykallas.com

**W. Tucker Brown**
Mr. Brown practices in the area of class action and antitrust litigation.  He is a member of Alabama Bar since 2004 and is admitted to practice before the United States Court of Appeals for the Eleventh Circuit, as well as the U.S. District Courts for the Northern, Middle and Southern Districts of Alabama, and the U.S. District Court for the District of Colorado. He obtained a B.A., *cum laude*, in 2001 from Vanderbilt University and received his J.D., *magna cum laude*, in 2004 from the Georgetown University Law Center where he was Order of the Coif. Following law school he served as law clerk to Hon. William M. Acker, Jr., U.S. District Court for the Northern District of Alabama from 2004 to 2005. He is a member of the Alabama State Bar, the American Bar Association (Antitrust Division), Birmingham Bar Association and American Association for Justice.  He was born in Birmingham, Alabama.
E-MAIL: tbrown@whatleykallas.com

**Charlene P. Ford**
Ms. Ford concentrates her practice in the areas of class actions, complex litigation, small business law and business litigation as well as appellate practice.  She is a member of the Alabama Bar and is admitted to practice before the U.S. Supreme Court and the U.S. Court of Appeals for the 11th Circuit.  She is a member of the Birmingham and American Bar Associations, Alabama State Bar, Alabama Association for Justice, and American Association for Justice.

Ms. Ford is a graduate of the University of Montevallo (B.S., summa cum laude, 1982) and Cumberland School of Law of Samford University (J.D., summa cum laude, 1993) where she was a Member (1991-1993) and Comment Editor (1992-1993) of the Cumberland Law Review. Following law school, she served as law clerk to the Honorable Judge William M. Acker, Jr., U.S. District Court, Northern District of Alabama.  Ms. Ford is the author of "Rule 11: Due Process Reconsidered," 22 Cumberland Law Review 729, 1991-1992.   She was born in Limestone County, Alabama.

Reported Cases: PacifiCare Health Systems, Inc. v. Book, 538 U.S. 401, 123 S.Ct. 1531 (2003); Klay v. Humana, Inc., 382 F.3d 1241 (11th Cir. 2004); McFarlin v. Conseco Services, L.L.C., 381 F.3d 1251 (11th Cir. 2004); In re Humana Inc. Managed Care Litigation, 333 F.3d 1247 (11th Cir. 2003); In re Humana Inc. Managed Care Litigation, 285 F.3d 971 (11th Cir. 2002); In re Managed Care Litigation, 246 F.Supp.2d 1363 (Jud. Pan. Mult. Lit. 2003); In re Managed Care Litigation, 236 F.Supp.2d 1336 (S.D. Fla. 2002); In re Managed Care Litigation, 209 F.R.D. 678 (S.D. Fla. 2002); In re Managed Care Litigation, 135 F. Supp.2d 1235 (S.D. Fla. 2001); Moore v. Liberty Nat. Ins.Co., 108 F.Supp.2d 1266 (N.D. Ala. 2000); Avis Rent A Car Systems, Inc. v. Heilman, 876 So.2d 1111 (Ala. 2003); Yeager v. General Motors Acceptance Corp., 719 So.2d 210 (Ala. 1998); Johnson v. Garlock, 682 So.2d 25 (Ala. 1996).
E-MAIL: cford@whatleykallas.com

**Deborah Winegard**

Ms. Winegard represents physicians, medicals staffs, and medical societies, and focuses her practice on third-party payer issues, including the representation of physicians in overpayment recovery audits, contracting issues, and litigation.

Ms. Winegard's prior experience includes serving as the General Counsel and Director of Third Party Payer Advocacy for the Medical Association of Georgia, as Law & Government Affairs Vice President for four states for AT&T, and as an Associate on King & Spalding's Healthcare Team.

Ms. Winegard served as the Facilitator for the MDL settlements with Aetna, Blue Cross Blue Shield Association, Capital Blue Cross, CIGNA, Health Net, and Humana, handling compliance disputes brought by physicians who complained that these health insurers had violated the settlement agreements reached in the MDL healthcare litigation.

Ms. Winegard speaks widely on healthcare and reimbursement issues affecting physicians and has given presentations for the Ambulatory Surgery Center Association, the American Association of Medical Society Counsel, the American Medical Association, the California Medical Association Leadership Academy, the Florida Radiology Business Managers Association, the Georgia Free Clinic Network,  the Institute for Continuing Legal Education of Georgia, the Medical Group Managers Associations and several of its chapters, and  the Texas Medical Association.

Ms. Winegard graduated *magna cum laude* with a B.A. in Politics from Wake Forest University in 1979, where she was elected to the Phi Beta Kappa honor society.  She earned her J.D. with honors from George Washington University in 1982.  She is admitted to practice in Georgia, as well as in the United States District Court for the Northern District of Georgia.

Ms. Winegard is based in Atlanta, where she serves as a member of the Board of Governors of LifeLink Foundation.  She has previously held leadership positions for the Health Law Section of the State Bar of Georgia, the Georgia Association for Women Lawyers, and the National Kidney Foundation of Georgia, and has also served on the Boards of Directors for the Alliance Française d'Atlanta and the Boys & Girls Clubs of Metro Atlanta.

Ms. Winegard speaks French and Spanish and is currently studying Chinese.
**E-MAIL:  dwinegard@whatleykallas.com**

**Shujan A. Awan**

Mr. Awan is an associate with the firm. He concentrates his practice in the areas of complex and multi-district litigation.  Mr. Awan graduated from New Jersey Institute of Technology, *magna cum laude* (B.S. Computer Science, 2002) and from Brooklyn Law School (J.D., 2008). During law school, Mr. Awan served as a student prosecutor for the United States Attorney's Office for the Eastern District of New York where he represented the federal government in the investigation and prosecution of misdemeanors and petty offenses. Mr. Awan was a summer associate and law clerk at the firm prior to joining on a full-time basis.

Mr. Awan is admitted to practice law in the State of New York and the Southern and Eastern Districts of New York.
**E-MAIL: sawan@whatleykallas.com**

**D. Jamie Carruth**, born 1979; admitted to bar, Alabama, 2004. *Education:* University of Alabama, Tuscaloosa, Alabama, (B.A. May 2001); University of Alabama School of Law, Tuscaloosa, Alabama (J.D. 2004); *Member:* American Bar Association.
**E-MAIL: jcarruth@whatleykallas.com**

**William J. N. Coxwell**, born Monroeville, Alabama, 1980; He was admitted to Alabama bar in 2005 and is admitted to practice in the United States District Courts for the Northern, Middle and Southern Districts of Alabama, as well as the Eleventh Circuit Court of Appeals. *Education:* University of Alabama School of Law, J.D. (2005), Rhodes College, B.A. (2002); *Member:* Alabama State Bar; American Bar Association
**E-MAIL: wcoxwell@whatleykallas.com**

**S. Scott Garrett**
Scott Garrett is a graduate of the Birmingham School of Law, May, 2012. He also graduated with a B.A. in English from Oglethorpe University in 1994. Mr. Garrett joined the Firm after passing the July 2012 Alabama Bar Examination.  He is admitted to practice law in the state of Alabama as well as the United States District Court for the Northern District of Alabama.
**E-MAIL: sgarrett@whatleykallas.com**

**Michael S. Lyons**
Mr. Lyons graduated from the University of California at Santa Barbara with honors (B.A. Philosophy, 2008) and from Duke Law School (J.D., 2012).  While in law school, Mr. Lyons was a Submissions Editor for the Duke Environmental Law and Policy Forum.  Mr. Lyons joined the Firm after passing the July 2012 New York Bar Examination.  He is admitted to practice law in the state of New York.
**E-MAIL: mlyons@whatleykallas.com**

**Lawrence M. Bond**
Mr. Bond is a graduate of Villanova University School of Law (J.D., 2009).  He also graduated with a B.A. in History from Lafayette College in 2002. He clerked for the Honorable Patrick DeAlmeida in the Tax Court for New Jersey in 2009-2010.  He is admitted to the New Jersey, Pennsylvania, and Colorado State Bars.
**E-MAIL: lbond@whatleykallas.com**

**Henry C. Quillen**
Before joining WhatleyKallas, Mr. Quillen was an associate in the litigation department of Sullivan & Cromwell LLP, where he focused on complex commercial litigation. He also served as a law clerk to the Honorable A. Raymond Randolph of the United States Court of Appeals for the District of Columbia Circuit, as well as the Honorable Jeffrey Howard of the United States Court of Appeals for the First Circuit.

Mr. Quillen graduated from Harvard College magna cum laude (A.B., Biochemical Sciences, 2000) and Yale Law School (J.D., 2007). He also received a Master in Public Administration from Kennedy School of Government (2007). He is a member of the American Bar Association and admitted to practice in New York, New Hampshire, the District of Columbia, the United States District Court for the District of Colorado, District of Columbia, and District of New Hampshire, and the United States Court of Appeals for the First, Tenth, Eleventh, and District of Columbia Circuits.
E-MAIL: hquillen@whatleykallas.com

## OTHER

### Howard M. Miles

As Executive Director and an active attorney, Mr. Miles is responsible for the business operations of the firm, including supervision of the human resources, accounting and communications departments, and he is an actively practicing lawyer. Prior to joining the firm, Mr. Miles was in private law practice for over 20 years, a portion of which he served as General Counsel for a broadcasting company based in Birmingham. Mr. Miles has counseled his business clients, including healthcare providers on a broad range of topics, including litigation, arbitration, and significant transaction work. Mr. Miles is FINRA-registered, by passing the Series 7, and is a registered mediator with the Alabama Center for Dispute Resolution. He has used his litigation and accounting background in hospital representation before arbitrators.

He has been a member of the Alabama and Mississippi State Bars since 1983. Prior to law school, Mr. Miles was a Certified Public Accountant in Mississippi. He obtained a B.B.A. in 1979 and J.D. in 1983 from the University of Mississippi. He was born in Ketchikan, Alaska.
E-MAIL:  hmiles@whatleykallas.com

**Birmingham • New York• Boston • Aspen • Atlanta • San Diego • San Francisco • Los Angeles • New Hampshire**

| | | |
|---|---|---|
| 2001 Park Place North | 1180 Avenue of the Americas | 60 State Street, 7th Floor |
| Suite 1000 | 20th Floor | Boston, MA 02109 |
| Birmingham, AL  35203 | New York, NY 10036 | Telephone: (617) 573-5118 |
| Telephone: (205) 488-1200 | Telephone: (212) 447-7060 | Facsimile:  (617) 573-5090 |
| Facsimile: (800) 922-4851 | Facsimile: (800) 922-4851 | |
| | | |
| 720 East Durant Avenue | 1068 Virginia Ave. NE | 10200 Willow Creek Road, Ste 160 |
| Suite E6 | Atlanta, GA 30306 | San Diego, CA 92131 |
| Aspen, CO 81611 | Telephone: 404-607-8222 | Telephone: 619-308-5034 |
| Telephone: 970-300-4848 | Facsimile: 404-607-8451 | Facsimile: 888-331-9633 |
| Facsimile: 970-427-5536 | | |

1 Sansome Street, 35th Fl.
PMB #131
San Francisco, CA 94104
Telephone: 415-906-3876
Facsimile: 888-331-9633

355 So. Grand Avenue, Ste 2450
Los Angeles, CA 90071
Telephone: 310-684-2504
Telephone: 213-943-1312
Facsimile: 888-331-9633

159 Middle Street, Suite 2C
Portsmouth, NH  03801
Telephone:  603-294-1591
Facsimile:  800-922-4851

**www.whatleykallas.com**

# EXHIBIT 2

## WIGGINS CHILDS PANTAZIS FISHER GOLDFARB

Wiggins Childs Pantazis Fisher Goldfarb ("Wiggins Childs"), formerly known as Wiggins, Childs, Quinn & Pantazis, LLC, is a major litigation firm with offices in Birmingham, Alabama; DeLand, Florida; Washington, D. C.; Mobile, Alabama; and Nashville, Tennessee.   Since its formation in 1985, the Firm has taken on industry giants throughout the USA, including Winn-Dixie, Cracker Barrel Old Country Stores, Family Dollar Stores, Merck, J. P. Morgan Chase, U. S. Pipe and Foundry Company, Pittsburgh Plate Glass, Goody's, Kroger, U. S. Steel Corporation, all of the HMO's, Ashland, Inc., BP Oil Company, Chevron USA, Inc., ConocoPhillips Company, El Paso Corporation, Exxon Mobil Corporation, Hess Corporation, Kinder Morgan, Inc., Marathon Oil Corporation, Sinclair Oil Corporation, Shell Oil Company, Sunoco, Inc., Valero Energy Corporation, Philip Morris USA Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, The American Tobacco Company, Lorillard Tobacco Company, Vector Group LTD, Inc., Liggett Group, Inc.   The Firm has expanded to over 35 lawyers today.   The Firm emphasizes complex litigation of all types, including employment discrimination, environmental liability, securities, Fair Labor Standards Act, anti-trust, contract, commercial, products liability, personal injury, civil rights, trade secrets, business torts and health cases.

## NOTEWORTHY CASES:

- ■   *In re Blue Cross Blue Shield Antitrust Litigation* (N. D. AL, MDL No. 2406), Wiggins Childs attorneys are currently serving as members of Provider Plaintiffs' Steering Committee representing physicians in the multidistrict litigation against numerous Blue Cross entities.
- ■   *Rick Love, M.D., et al. v. Blue Cross and Blue Shield Association, et al.* (SD. Fla., 03-21296-CIV), Wiggins Childs attorneys served as members of Plaintiffs' Steering Committee representing physicians, physician groups and physician organizations against Blue Cross and Blue Shield Association and numerous Blues Parties in federal court in Miami, Florida.  Plaintiffs' lawyers negotiated settlement that provided over one billion dollars in value to the class.
- ■   *In re Managed Care Litigation* (S.D. Fla. MDL-2000), Wiggins Childs attorneys served as members of Plaintiffs' Steering Committee representing 600,000 physicians in the multidistrict litigation against HMO's in federal court in Miami. The plaintiffs' lawyers negotiated settlement from five of the defendants that provided over one billion dollars in value to the class.
- ■   *Reynolds v. Alabama Department of Transportation* (M.D. Ala. 2001), The firm settled a 16 year old bias suit against The Alabama Department of Transportation in September 2001 for a total of $59.8 million.   The deal included two settlements: $46 million to 2,400 black employees and $8.4 million to an undeterminable number of white employees who intervened in the suit after the original filing.   Wiggins Childs represented the black employees.

- *Moore v. Norfolk Southern Corp.* (N.D. Ala. 2001), Virginia-based Norfolk Southern Corp. agreed to pay $28 million to settle charges of racial discrimination against 7,700 black employees who were allegedly denied advancement.   Nine named plaintiffs sued the railway company in 1993 and the suit was certified as a class action in 1995.   Norfolk also agreed to spend another $2.6 million on a program to correct its advancement procedures.
- *Morgan, et al. v. Family Dollar Stores* (551 F. 3d 1233; N.D. Ala. 2001), the Eleventh Circuit recently affirmed a $35 million award for store managers against Family Dollar Stores.   Wiggins Childs was lead counsel both in the trial and on appeal.
- *In Re: American General Life and Accident Insurance Company - Industrial Life Insurance Litigation* (Dist. of SC, Columbia Div., 2001), In 2002, Wiggins Childs attorneys were named to Plaintiffs' Steering Committee representing a class of individuals, who were sold an insurance policy wherein they were charged a higher premium based on race.
- *In Re: Terrorist Attacks on September 11, 2001* (S.D. NY 2003), In 2004, Wiggins Childs attorneys were named to Plaintiffs' General Steering Committee representing families of those individuals who were killed during the terrorist attacks on September 11, 2001.
- *Ledbetter v. Goodyear Tire & Rubber* (Supreme Court No. 05-1074; 550 U.S. 618 2007; N.D. Ala. 1999; rev'd, 421 F. 3d 1169 (11th Cir. 2005), *cert* granted, 548 U.S. ____ 2006), the Firm was lead counsel in the Trial and before the U.S. Supreme Court; the case was eventually foundation for the first bill signed by President Obama extending the statute of limitation rights and naming the bill the *Ledbetter Act*.
- *In Re: Pharmacy Benefit Managers AntiTrust Litigation* (E.D. PA 206), In 2007, Wiggins Childs attorneys were named to Plaintiffs' Steering Committee representing a class asserting antitrust conspiracies against three (3) National PBMs.
- *In Re: Comcast Corp. Set-Top Cable Television Box Anti-Trust Litigation* (E.D. Pa. 2009), in 2009, Wiggins Childs attorneys were named to Plaintiffs' Steering Committee representing individuals who purchased Premium Cable from Comcast and who were forced to rent a set-top box distributed by Comcast.
- *In re Riddell Concussion Reduction Litigation* (U.S. District Ct., District of NJ, Case No. 13-7585), in 2014, Wiggins Childs attorneys were appointed Co-Lead Class Counsel to act on behalf of the Plaintiffs and the putative Class against Riddell for its false and deceptive advertising of its Revolution football helmets.
- *Lee v. Allstate Life Insurance* (Circuit Court of Kane County, IL, 2003), Wiggins Childs was lead counsel in this National Class Action, which settled wherein over $100 million in benefit was distributed to the class of policy holders.

# EXHIBIT 3

# QUINN, CONNOR, WEAVER, DAVIES AND ROUCO LLP

## BIOGRAPHY

The attorneys of Quinn, Connor, Weaver, Davies, & Rouco LLP, have represented labor organizations, union members, pension and benefit trust funds and individual employees across a wide spectrum of labor and employment law throughout the southeast United States for more than twenty five years.  The attorneys at Quinn Connor have developed well recognized expertise in labor law and ERISA.  They fight to advance the rights of employees collectively and individually.  By their representation of ERISA regulated plans, they defend the rights that workers have earned in collective bargaining.

In our Union-side practice, our attorneys represent Local, District and International Unions in all areas of labor law before administrative agencies, in state and federal courts, in labor arbitrations, and in collective bargaining throughout the United States.

In our work with individual employees, our attorneys represent employees in the federal courts in numerous employment-related areas, including class actions, ERISA benefit claims, wage and hour litigation, race, age, gender or disability-related discrimination and retaliation. We also assist individuals seeking benefits from work-related injuries, black lung benefits and social security disability, and those suffering personal injuries. The firm also maintains an employment mediation practice.

The firm also represents plaintiffs in complex litigation involving enforcement of statutes regulating competition and sale of securities.  These practice areas grew out of the Firm's history of representing employees and pension and welfare benefit trust funds.

The firm represents numerous Taft-Hartley pension and welfare benefit trust funds in all areas of ERISA plan administration and litigation.

## Glen M. Connor

For the past two decades, Mr. Connor has represented employee benefit plans, unions, and employees.  He has developed a well-recognized expertise in ERISA and has represented employee benefits plans in numerous lawsuits across the United States.  He has assumed primary responsibility in some of the largest 401(k) ERISA actions in the country.  Mr. Connor leads administrative matters related to the pension funds and health and welfare funds that the firm represents.  He also regularly represents labor unions in arbitration proceedings involving disputes over the application and interpretation of a collective bargaining agreements.  His practice is concentrated in the areas of ERISA, employee benefits, bankruptcy and pension plans.

He is a member of the Alabama Bar and is admitted to practice before the U.S. Court of Appeals for the Third, Sixth, and Eleventh Circuits and U.S. District Courts for the Northern, Middle and Southern Districts of Alabama.  Mr. Connor attended Birmingham-Southern College (B.A., cum laude, 1981) and the University of Alabama (J.D., 1984) where he was a member of the John A. Campbell Moot Court Board (1983-1984). He is a member of the Alabama State Bar and

1

American Bar Association.  Mr. Connor was born in Ft. Walton Beach, Florida.

Reported Cases: Rankin v. Rots, 220 F.R.D. 511 (E.D. Mich. 2004); Rankin v. Rots, F.Supp. 853 (E.D. Mich. 2003); McCoy v. Hess Oil of Virgin Islands, 206 F.Supp.2d 276 (D.V.I. 2002); United Steelworkers of America v. Cherokee Electric Co-op, 127 LRRM (BNA) 2375; 108 Lab.Cas. p. 10, 441; aff'd 829 F.2d 1131; cert. den. 458 U.S. 1038; 108 S.Ct. 1601 (1988); Operating Engineers Local 312 Health and Welfare Fund v. Rivers & Rhodes, Inc., 813 F.Supp. 791 (N.D. Ala. 1993); United Steelworkers of America v. Simcala, 111 F.Supp.2d 1287 (M.D. Ala. 2000); Kirwan v. Reynolds, 536 So. 2d 936 (Ala. 1988).
**e-mail: gconnor@qcwdr.com**


**Norman J. Slawsky**

Norman Slawsky has served as the attorney for unions, employee benefit plans, employees, and other entities for more than thirty years.  His experience includes serving as general counsel for Taft-Hartley employee benefit plans and he is experienced in related litigation.  He has represented labor unions in arbitration proceedings and collective bargaining negotiations and he has represented plaintiffs and defendants in employment discrimination cases, ERISA, wage and hour cases, and other labor and employment cases.  Mr. Slawsky serves as an arbitrator on the American Arbitration Association Southeast Employment Panel and is the county attorney for Oglethorpe County, Georgia.

He has served as Chair of the State Bar of Georgia Labor and Employment Section and the Atlanta Bar Association Labor and Employment Section and is a member of the International Foundation of Employee Benefit Plans, the American Bar Association Labor and Employment Law Section, and the AFL-CIO Lawyer Coordinating Committee.  He is a Fellow of the College of Labor and Employment Lawyers and has a Martindale-Hubbell rating of "AV."

He has authored articles and has served as a speaker on employee benefits, labor and employment law, municipal law, and was a contributing author for How Arbitration Works.  He is admitted to the U.S. District Courts in Georgia, the U.S. Court of Appeals for the Eleventh Circuit, the U.S. Supreme Court, and is a member of the State Bar of Georgia.

Mr. Slawsky is a graduate of SUNY Binghamton with a B.A. in Economics, CUNY with an M.A. in Mathematics, and the University of Georgia School of Law with a J.D.


**Richard P. Rouco**

The practice of Mr. Rouco is focused in the areas of class actions, antitrust, ERISA, union labor law, and securities fraud.  Mr. Rouco also has extensive experience representing Unions and/or their members in suits brought under the Labor Management Relations Act, Labor Management Reporting and Disclosure Act, the Fair Labor Standards Act, the WARN Act, ERISA and matters falling under the jurisdiction of the National Labor Relations Board.  He has handled a considerable number of cases before the NLRB.

2

As part of his experience representing employees, Mr. Rouco has actively litigated and settled wage and hour class actions. For example, Mr. Rouco recently was appointed co-Class Counsel in *Burgess et al. v. Tesoro Refining and Marketing Co.*, USDC Case No. CV 10-5870 VBF (C.D. Cal.), *Gardner v. Shell Oil Co. d/b/a Equilon Enterprises et. al.*, 2011 WL 1522377 (N.D. Cal. Apr. 11, 2011) and *Delagarza v. Tesoro Refining and Marketing,* 2011 WL 4017967 (N.D. Cal. Sept. 08, 2011). These cases involved litigation under California's wage and hour statutes. The district courts granted certification after extensive litigation on the class certification issue. The district court recently approved a Class Settlement in *Gardner v. Shell Oil* where the Class recovered approximately $10 million. In January 2010, Mr. Rouco was also part of a trial team that successfully tried an FLSA wage and hour collective action in *Johnson v. Koch Foods,* Case No. 2:07-cv-000051 (E.D. Tenn.). The favorable jury verdict on the issue of liability resulted in a settlement that benefitted over 1000 employees.

In addition to his experience as a labor union lawyer, Mr. Rouco has also developed an active practice in the area of antitrust and securities fraud litigation. His interest in antitrust litigation grew out of his experience representing working families and their Unions in disputes with multi-national corporations. He currently represents plaintiffs in several anti-trust cases alleging price fixing and other unlawful restraints of trade. Recently, Mr. Rouco substantially participated in *In Re Puerto Rican Cabotage Antitrust Litigation*, 815 F.Supp.2d 448 (D.P.R.2011). The Plaintiffs alleged that Defendants had engaged in a conspiracy to fix the prices for ocean shipping services to Puerto Rico. The district court approved certified a Settlement Class and approved a Class Settlement with a monetary value of approximately $65 million. He is involved in the *In Re American Express Anti-Steering Antitrust Litigation*, 11-md-2221-NGG-RER (E.D.N.Y) where Plaintiffs are challenging certain American Express network rules.

Mr. Rouco also has experience litigation securities fraud cases on behalf of institutional investors. Mr. Rouco substantially contributed in *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009). The case involved a securities fraud allegation against the Defendant Flowserve arising from a restatement of financial statements. Though the district court granted summary judgment on the issue of "loss causation", the Fifth Circuit reversed the trial court's denial of class certification and granting of Defendants' motion for summary judgment. After reversal, the case settled on a class wide basis for approximately $50 million. Mr. Rouco continues litigating cases brought under the 1934 Securities Exchange Act and the Securities Act of 1933.

Mr. Rouco also represents and counsels Taft-Hartley funds with respect to various ERISA related issues. He has represented employees in ERISA litigation seeking recovery of benefits. Because of his ERISA background, Mr. Rouco was asked to teach ERISA seminars at the University of Alabama School of Law. As an adjunct professor, Mr. Rouco lectured students on ERISA's substantive and enforcement provisions.

Mr. Rouco is a member of the Alabama Bar and is admitted to practice before the U.S. Court of Appeals for the Eleventh Circuit and the U.S. District Courts for the Northern, Middle and Southern Districts of Alabama. He is a member of the Alabama State Bar and American Bar

Association. Mr. Rouco is a Board Member for the Greater Birmingham Ministries.   He is the author of "Available Remedies Under ERISA," Section 502 45 Alabama Law Rev., 1994.  In 2006, he addressed the Whatley Drake LLC Continuing Legal Education Conference on "The Basics of Antitrust Class Action Litigation," Complex Litigation, Mass Torts & Class Actions Continuing Legal Education Summit.

Mr. Rouco has also held several teaching positions including Adjunct Professor at the University of Alabama School of Law (2003-2004) and (2004-2005) and at Occidental College, Los Angeles, California (1989-1991); Graduate Teaching Fellow, Department of Philosophy at University of California, Irvine (1989-1990).  He was a Research Assistant at the Alabama Law Institute (1992-1994).

He is a graduate of Florida State University (B.A., cum laude, 1987), University of California, Irvine (M.A., Candidate, 1991) and the University of Alabama School of Law (J.D., magna cum laude, 1994).  In law school, he served as Senior Articles Editor, Alabama Law Review (1993-1994) and member, Order of the Coif.  He was Most Outstanding Undergraduate, Florida State University College of Arts & Sciences (1987); Most Outstanding Student, Florida State University Department of Philosophy (1986-1987)  and Recipient, University of California Regents Fellowship, (1987-1990).  He was born in Miami, Florida, July 17, 1964.

Reported Cases: Adams v. United Steelworkers of America, 189 F.3d 1321 (11th Cir. 1999); Ryan et. al v. Flowserve Corp., 2007 WL 946052 (ED Tx); Boin v. Verizon South, 283 F.Supp. 2d 1254 (M.D. Ala. 2003); Estate of Rodriquez v. Drummond Company, 256 F.Supp. 2d 1250 (N.D. Ala. 2003); Williams v. United Steelworkers, 234 F.Supp. 2d 552 (M.D.N.C. 2002); United Steelworkers of America v. Ivaco, 216 F.R.D. 693 (N.D. Ga. 2002); Millcraft-SMS, LLC v. USW, 346 F. Supp. 2d 1176 (N.D. Ala. 2004); Delagarza v. Tesoro Refining and Marketing, 2010 WL 3490231 (N.D. Cal. 2010); Gardner v. Shell Oil, 2010 WL 1576457 (N.D. Cal. 2010); Williams v. Packaging Corp. of America, 2010 WL 1418378 (M.D. Ga. 2010); Kearse v. Kaplan, Inc., 692 F. Supp. 2d 398 (S.D.N.Y. 2010); Smith v. Laddin, 424 B.R. 529 (N.D. Ala., 2010); Fenwick v. The Advest Inc., 2009 WL 5184405 (D. Conn. 2009); In Re Verilink Corp., 2009 WL 4609308 (Bkrtcy. N.D. Ala. 2009); Johnson v. Koch Foods, Inc., 670 F. Supp. 2d 657 (E.D. Tenn. 2009); USW v. ConocoPhillips, 2009 WL 1610074 (C.D. Cal. 2009); Rodgers v. Averitt Express, Inc. 2008 WL 5120900 (N.D. Ala. 2008); Ryan v. Flowserve Corp. 245 F.R.D. 560 (N.D. Tex. 2007); Graphic Packaging International v. USW, 2007 WL 2275238 (M.D. Ga. 2007); McPhail v. First Command Financial Planning, 247 F.R.D. 598 (S.D. Cal. 2007); George v. LINA, 2007 WL 900836 (M.D. Ala. 2007); North Jackson Pharmacy Inc. v. Express Scripts et. al., 2006 WL 6625864 (N.D. Ala. 2006); Clavert v. Eljer Plumbingware Inc., 2005 WL 1683780 (N.D. Miss. 2005); Youngblood v. Potter, 262 F. Supp. 2d 1309 (M.D. Ala. 2003); Romero v. City of Clanton, 220 F. Supp. 2d 1313 (M.D. Ala. 2002); Tamko Roofing Products v. USW, 2000 WL 33711514 (N.D. Ala. 2000); USW v. Simcala, Inc., 111 F. Supp. 2d 1287 (M.D. Ala. 2000).

**e-mail: rrouco@qcwdr.com**

**Robert M. Weaver**

Mr. Weaver attended Bowdoin College (B.A., 1985) and the University of North Carolina School of Law (J.D., 1988). He is admitted to the Alabama and Georgia Bars, and the bars of U.S. Supreme Court, the 5th, 6th, 9th, 10th and 11th U.S. Circuit Courts of Appeal, and the U.S. District Courts in Alabama, Georgia and the Eastern District of Tennessee. Mr. Weaver authored the firm's Alabama Worker's Compensation and Americans with Disabilities Act publications for union members, and is a frequent speaker on labor law issues to bar and union audiences.

Mr. Weaver has been with the firm's Birmingham office since 1988, when he joined Stropp & Nakamura. Since that time he has represented union clients in all aspects of traditional employment law, including collective bargaining, arbitration and contract enforcement; organizing and practice before the NLRB; and litigation defense, including fair representation, discrimination, and claims arising from union selective strike and corporate campaigns. He currently serves as General Counsel of the Association of Minor League Umpires. In addition Mr. Weaver has represented Taft-Hartley funds, as well as individual employees in employment discrimination, Worker's Compensation and disability litigation.

Reported Cases: <u>Petrella v. CWA</u>, 250 Fed. Appx. 291, 2007 WL 2932012 (11th Cir. 2007); <u>Taafe v. BellSouth</u>, 204 Fed. Appx. 829, 2006 WL308536 (11th Cir. 2006); <u>Golden v. CWA</u>, 182 Fed. Appx. 459, 2006 WL 1359969 (6th Cir. 2006); <u>Spry v. CWA Local 3104</u>, 2008 WL 783749 (S.D. Fla. 2008); <u>Uniroyal Goodrich Tire v. Riddle</u>, 853 Supp. 1371 (M.D. Ala. 1994); <u>MasTec</u>, 356 NLRB No. 110 (2011); <u>Southern Nuclear Operating Co.</u>, 348 NLRB No. 95 (2006); <u>Wise Alloys</u>, 123 LA 4 (2006); <u>UA Local 760</u>, 116 LA 710 (20010: <u>Pacific Bell</u>, 107 LA 6868 (1996). **e-mail: rweaver@qcwdr.com**

## George N. Davies

Mr. Davies is a partner in the Birmingham office and represents Unions, Taft-Hartley trust funds, and individuals in employment, occupational disease, benefit, and personal injury matters. He is currently the Union and Employee Co-Chair of the Antitrust, RICO and Labor Law Committee of the American Bar Association's Labor and Employment Law Section, and a member of its Committee on the Development of the Law under the NLRA and Occupational Safety and Health. He is also a member of the ABA's Litigation Section and its Committee on Business Torts Litigation. He is also a member of the AFL-CIO's Lawyers Coordinating Committee. He is admitted to practice in the state Bars of Alabama, Virginia, and West Virginia. Mr. Davies is also a contributing editor to the 4th Edition of the Developing Labor Law, having contributed to the drafting of Chapter 30, "RICO and Labor Law". He has argued cases before the United States Courts of Appeal for the District of Columbia, Eleventh, Sixth, and Fourth Circuits, and in many U.S. District Courts. From 1986 to 1991, Mr. Davies was an attorney with the United Mine Workers of America. Mr. Davies received his J.D. from Catholic University of America School of Law in 1986 and his B.S. in 1983 from Ithaca College.

Publications: Author, "Neutrality Agreements: Basic Principles of Enforcement and Available Remedies," 16 The Labor Lawyer, No. 2, Fall 2000; Author, "Compliance or Non-Compliance with OSHA Regulations: Shield, Sword, Neither, or Both in Personal Injury Litigation?", Presented to the American Bar Association Committee on Occupational Safety and Health Law

Mid-Winter Committee Meeting, 2001; Author, "Will the Supreme Court Apply the Brakes to RICO?", Birmingham Bar Association Bulletin, Spring 1994.
**e-mail: gdavies@qcwdr.com**


**Tessa Warren**

Ms. Warren is a partner in the Atlanta office. She attended Tulane Law School (J.D., 2003) and Tulane University (Magna Cum Laude, B.A., 1996). She is admitted to the U.S. District Court Northern District of Georgia. Ms. Warren is a member of the State Bar of Georgia, Labor and Employment Section, the Maryland State Bar Association and the American Bar Association.

Ms. Warren practices in Employment and Labor Law, including Federal employees, ERISA, International Litigation, Business Litigation, General Federal Litigation and Appellate Practice.
**e-mail: twarren@qcwdr.com**


**Abigail P. van Alstyne**

Ms. Alstyne is a graduate of Wellesley College and Boston University School of Law, has been a member of the Alabama State Bar since 1980, and is admitted to the 5th and 11th Circuit Courts of Appeal, all federal District Courts in Alabama, and the United States Supreme Court. Her background as a civil right activist in Mississippi during the 1960's led her to become a lawyer. Ms. van Alstyne worked for the Legal Services Corporation of Alabama, the Southern Poverty Law Center and as a clerk to U.S. Magistrate John L. Carroll before moving to Birmingham.

Before joining the firm in 2010, she represented nurses, restaurant servers, and industrial workers in Title VII and Fair Labor Standards cases for several years. Currently, Ms. van Alstyne represents miners and their survivors fighting for Black Lung benefits as well as employees with workers' compensation, disability, and wage and hour claims. She also handles cases involving discrimination, retaliation, and other civil rights matters.

Ms. van Alstyne has been a member of several local and state Bar committees, the American Bar Association, the Association of Trial Lawyers of America, and numerous community service organizations. She is also a volunteer mediator in Jefferson County District Court. She is co-author of Consumer Law Practice Manual and wrote a guide to the evaluation of Social Security disability claims.
**e-mail: avanalstyne@qcwdr.com**


**John L. Quinn, Of Counsel**

John L. Quinn represents labor organizations and individuals in employment matters, including the area of health and safety and toxic tort litigation. He represents the Communications Workers of America, AFL-CIO, and serves as CWA District Counsel on a full time basis. He was

instrumental in forming the firm.  Mr. Quinn graduated cum laude from the University of Georgia School of Law and where he was a member of the editorial board of the Georgia Law Review. He is also a member of the Georgia Chapter of The Order of the Coif. Before entering private practice, Mr. Quinn served as counsel to member Howard Jenkins of the National Labor Relations Board and later as a Regional trial attorney.

Mr. Quinn is an active member of the AFL-CIO Lawyers Coordinating Committee and has chaired its Advisory Board; he is a longstanding member of the ABA's EEO Committee, having served as its Co-Chair from 1995-1997; Mr. Quinn is also a member of the National Employment Lawyers Association. In 1999, he was elected a Fellow of the College of Labor and Employment Lawyer.  He is admitted to the bar of Georgia, Tennessee and Mississippi and is a member of their Labor and Employment Law Sections. Mr. Quinn is a neutral in employment matters, certified by the United States District Court for the Northern District of Alabama, and serves as a mediator to the EEOC. Mr. Quinn has been a frequent speaker at national employment law seminars sponsored by the LCC, American Bar Association, and the National Employment Lawyers Association. John Quinn was named 2005 Friend of Labor by the Alabama Organized Labor Awards Foundation.


## J. Michael Walls, Of Counsel

Mr. Walls was born in La Grange, Georgia, on December 3, 1944. He was admitted to the Ohio bar in 1974, and the Georgia bar in 1975 after receiving degrees from Georgia Southern College (A.B., 1968); Cumberland School of Law of Samford University (J.D., cum laude, 1973).  Mr. Walls served as an Assistant Attorney General in Georgia, from 1975-1977 and a Special Assistant State Administrative Law Judge, 1998-2001. He is the author of "Merger of Law and Equity in Alabama" 33 Alabama Lawyer 132, 1972; "NLRB Regional Director Has Discretion in Petitioning for Injunction After Determining Probable Unfair Labor Practice by Union" 33 Cumberland-Samford Law Review 226, 1972; "Problems and Solution in Exclusionary Zoning," 4 Cumberland-Samford Law Review 105, 1973; "The Law of Naturalization-A Uniform Law, Devoid of Uniformity," 7 Cumberland-Samford Law Review 211, 1976; "Fifth Circuit Survey, Constitutional-Criminal Law," 27 Mercer Law Review 911, 1976.

Mr. Walls served as a member and chair of the Metropolitan Atlanta Rapid Transit Authority (MARTA) Board of Directors.  He also served as a member of the Advisory Board for the AFL-CIO Lawyer's Coordinating Committee from 1987-1990. Mr. Walls is a member of the State Bar of Georgia and the Atlanta Bar Association.  He served as President of the Labor Law Section of the Atlanta Bar from 1996-1997 and served as President of the Atlanta Chapter of the Industrial Relations Research Association from 1985-1987.  Mr. Walls currently practices Labor and Employment Law.

# EXHIBIT 4

**COURT-ORDERED NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**
**THIS NOTICE IS TO INFORM YOU THAT A PROPOSED CLASS ACTION SETTLEMENT POTENTIALLY AFFECTING YOUR RIGHTS HAS BEEN PRELIMIMARILY APPROVED.**

The United States District Court for the Northern District of Alabama, Southern Division (the "Court"), authorized this Notice.

**A proposed class settlement involving Bright House Networks ("BHN") (the "Settlement"), if finally approved by the Court, will provide current digital cable customers of BHN with a $30 account credit for services not currently subscribed to.  PLEASE READ THIS NOTICE CAREFULLY, AS YOUR RIGHTS MAY BE AFFECTED.**

A Settlement has been preliminarily approved in the lawsuit *Parsons v. Bright House Networks, LLC*, Civil Action No. 2:09-cv-267-AKK, in which the Plaintiff alleges that Defendant BHN engaged in a practice of requiring Premium Cable subscribers to lease one of its set-top boxes, and that this constitutes an unlawful tying arrangement that violates Section 1 of the Sherman Antitrust Act.  BHN denies all allegations.  **For more information about the claims in the case, please go to www.[websiteaddress].com] or call [Toll-Free Number].**

**Am I a Class Member?** The certified Settlement Class consists of all persons in the United States who subscribed to BHN for residential digital cable and paid BHN a monthly rental fee for an accompanying set-top box during the period February 2005 through the date of preliminary approval of the Settlement, which was [DATE].

**What Are My Options?**  You may do one of several things, as set forth below:

| | |
|---|---|
| **REMAIN A MEMBER OF THE SETTLEMENT CLASS AND RECEIVE AN ACCOUNT CREDIT OF $30.** | As a current customer of BHN, you will receive a $30 account credit for services not currently subscribed to.  You will have to elect the services to which the credit should be applied by submitting an Election Form to BHN via the online portal at www.[websiteaddress].com no later than [DATE].  See www.[websiteaddress].com for more details.<br>    You will be issued your account credit if and when the Court grants final approval of the Settlement, and any appeals are resolved in favor of the Settlement. The process for final approval and distribution of relief takes time; please be patient. |
| **ASK TO BE EXCLUDED ("OPT OUT")** | **Get no credit.**  If you opt out, you may retain your own lawyer at your own expense and pursue your own claims against BHN. You must submit a request to be excluded postmarked no later than [DATE].  See www.[websiteaddress].com, or call [toll-free number] for instructions on how to opt out of the Settlement. |
| **OBJECT TO THE SETTLEMENT** | **If you do not agree with the Settlement**, you can file with the Court an objection explaining why you do not agree with the Settlement. You must submit your written objection postmarked no later than [DATE].  See www.[websiteaddress].com, or call [toll-free number] for instructions on how to object to the Settlement. |
| **GO TO THE FINAL FAIRNESS HEARING** | **If you file an objection to the Settlement, you can attend and request to be heard at the Final Fairness Hearing**, either personally or through an attorney (whom you may retain at your own expense), at which time the Court will make a final decision as to whether the proposed Settlement is fair to all members of the Settlement Class.  You must file a request to appear at the Final Fairness Hearing no later than [DATE].  See www.[websiteaddress].com, or call [toll-free number] for instructions on how to file a request to appear at the Final Fairness Hearing, which will be held on [DATE], at ___a.m./p.m. |

**FOR MORE INFORMATION go to www.[websiteaddress].com or call [toll-free number].**

# EXHIBIT 5

**COURT-ORDERED NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**
**IF YOU ARE A CURRENT OR FORMER CUSTOMER OF BRIGHT HOUSE NETWORKS, LLC ("BHN") WHO SUBSCRIBED TO BHN FOR DIGITAL CABLE AT ANY TIME BETWEEN FEBRUARY 2005 AND THE PRESENT, PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED.**

The United States District Court for the Northern District of Alabama, Southern Division (the "Court"), authorized this Notice.

**A proposed class settlement involving BHN (the "Settlement"), if finally approved by the Court, will provide account credits to current digital cable customers of BHN and cash payments to former digital cable customers who fit within the definition of the Settlement Class (see below).  PLEASE READ THIS ENTIRE NOTICE, AS YOUR RIGHTS MAY BE AFFECTED.**

A Settlement has been preliminarily approved in the lawsuit *Parsons v. Brighthouse Networks, LLC*, Civil Action No. 2:09-cv-267-AKK, in which the Plaintiff alleges that Defendant BHN's practice of requiring Premium Cable subscribers to lease one of its set-top boxes constitutes an unlawful tying arrangement that violates Section 1 of the Sherman Antitrust Act.  BHN denies all allegations.  **For more information about the claims in the case, please go to www.[websiteaddress.com] or call [Toll-Free Number].**

**Am I a Class Member?**   The certified Settlement Class consists of all persons in the United States who subscribed to BHN for residential digital cable and paid BHN a monthly rental fee for an accompanying set-top box during the period February 2005 through the date of preliminary approval of the Settlement, which was [DATE].

**What Are My Options?**   You may do one of several things if you are a Settlement Class Member, as set forth below:

| | |
|---|---|
| **REMAIN A MEMBER OF THE SETTLEMENT CLASS AND RECEIVE AN ACCOUNT CREDIT OF $30 IF YOU ARE A CURRENT CUSTOMER OF BHN, OR RECEIVE A CASH PAYMENT OF $20 IF YOU ARE A FORMER CUSTOMER OF BHN.** | **If you are a current customer of BHN,** you will receive a $30 account credit for services not currently subscribed to.  You will have to elect the services to which the credit should be applied by submitting an Election Form to BHN via the online portal at www.[websiteaddress.com no later than [DATE].  See www.[websiteaddress.com for more details.<br><br>**If you are a former customer of BHN,** you will have to submit a claim form to receive your cash payment of $20 from BHN.  You can obtain a claim form at www.[websiteaddress.com, or by calling [toll-free number].  Your Claim Form must be postmarked by [DATE].<br><br>You will be issued your account credit or, if you are a former customer and file a claim, your check, if and when the Court grants final approval of the Settlement, and any appeals are resolved in favor of the Settlement. The process for final approval and allocation and distribution of funds takes time; please be patient. |
| **ASK TO BE EXCLUDED ("OPT OUT")** | **Get no credit or payment.**   If you opt out, you may retain your own lawyer at your own expense and pursue your own claims against BHN. You must submit a request to be excluded postmarked no later than [DATE].  See www.[websiteaddress.com, or call [toll-free number] for instructions on how to opt out of the Settlement. |
| **OBJECT TO THE SETTLEMENT** | **If you do not agree with the Settlement,** you can file with the Court an objection explaining why you do not agree with the Settlement. You must submit your written objection postmarked no later than [DATE].  See www.[websiteaddress.com, or call [toll-free number] for instructions on how to object to the Settlement. |
| **GO TO THE FINAL FAIRNESS HEARING** | **If you file an objection to the Settlement, you can attend and request to be heard at the Final Fairness Hearing,** either personally or through an attorney (whom you may retain at your own expense), at which time the Court will make a final decision as to whether the proposed Settlement is fair to all members of the Settlement Class.  You must file a request to appear at the Final Fairness Hearing no later than [DATE].  See www.[websiteaddress].com, or call [toll-free number] for instructions on how to file a request to appear at the Final Fairness Hearing, which will be held on [DATE], at ___a.m./p.m. |

**FOR MORE INFORMATION go to www.[websiteaddress].com or call [toll-free number].**

# EXHIBIT 6

## COURT-ORDERED NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

**IF YOU ARE A CURRENT OR FORMER CUSTOMER OF BRIGHT HOUSE NETWORKS, LLC ("BHN") WHO SUBSCRIBED TO BHN FOR DIGITAL CABLE AT ANY TIME BETWEEN FEBRUARY 2005 AND THE PRESENT, PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED.**

The United States District Court for the Northern District of Alabama, Southern Division (the "Court"), authorized this Notice.

**A proposed class settlement involving BHN (the "Settlement"), if finally approved by the Court, will provide account credits to current digital cable customers of BHN and cash payments to former digital cable customers who fit within the definition of the Settlement Class (see below).   PLEASE READ THIS ENTIRE NOTICE, AS YOUR RIGHTS MAY BE AFFECTED.**

A Settlement has been preliminarily approved in the lawsuit *Parsons v. Brighthouse Networks, LLC*, Civil Action No. 2:09-cv-267-AKK, in which the Plaintiff alleges that Defendant BHN engaged in a practice of requiring Premium Cable subscribers to lease one of its set-top boxes, and that this constitutes an unlawful tying arrangement that violates Section 1 of the Sherman Antitrust Act.  BHN denies all allegations.  For more information about the claims in the case, please go to www.[websiteaddress.com] or call [Toll-Free Number].

**Am I a Class Member?**  The certified Settlement Class consists of all persons in the United States who subscribed to BHN for residential digital cable and paid BHN a monthly rental fee for an accompanying set-top box during the period February 2005 through the date of preliminary approval of the Settlement, which was [DATE].

**What Are My Options?**  You may do one of several things if you are a Settlement Class Member, as set forth below:

| | |
|---|---|
| **REMAIN A MEMBER OF THE SETTLEMENT CLASS AND RECEIVE AN ACCOUNT CREDIT OF $30 IF YOU ARE A CURRENT CUSTOMER OF BHN, OR RECEIVE A CASH PAYMENT OF $20 IF YOU ARE A FORMER CUSTOMER OF BHN.** | **If you are a current customer of BHN,** you will receive a $30 account credit for services not currently subscribed to.  You will have to elect the services to which the credit should be applied by submitting an Election Form to BHN via the online portal at www.[websiteaddress].com no later than [DATE].   See www.[websiteaddress].com for more details.<br><br>**If you are a former customer of BHN,** you will have to submit a claim form to receive your cash payment of $20 from BHN.   You can obtain a claim form at www.[websiteaddress].com, or by calling [toll-free number].  Your Claim Form must be postmarked by [DATE].<br><br>You will be issued your account credit or, if you are a former customer and file a claim, your check, if and when the Court grants final approval of the Settlement, and any appeals |

| | |
|---|---|
| | are resolved in favor of the Settlement. The process for final approval and allocation and distribution of funds takes time; please be patient. |
| **ASK TO BE EXCLUDED ("OPT OUT")** | **Get no credit or payment.** If you opt out, you may retain your own lawyer at your own expense and pursue your own claims against BHN. You must submit a request to be excluded postmarked no later than [DATE]. See below for instructions on how to opt out of the Settlement. |
| **OBJECT TO THE SETTLEMENT** | **If you do not agree with the Settlement,** you can file with the Court an objection explaining why you do not agree with the Settlement. You must submit your written objection postmarked no later than [DATE]. See below for instructions on how to object to the Settlement. |
| **GO TO THE FINAL FAIRNESS HEARING** | **If you file an objection to the Settlement,** you can attend and request to be heard at the Final Fairness Hearing, either personally or through an attorney (whom you may retain at your own expense), at which time the Court will make a final decision as to whether the proposed Settlement is fair to all members of the Settlement Class. You must file a request to appear at the Final Fairness Hearing no later than [DATE]. See below for instructions on how to file a request to appear at the Final Fairness Hearing, which will be held on [DATE], at ___a.m./p.m. |

- **These rights and options – and the deadlines to exercise them – are explained in this Notice and in the proposed Settlement Agreement.**

- **The proposed Settlement will resolve all claims against BHN as explained in the proposed Settlement Agreement. The Court hearing this case still has to decide whether to approve the proposed Settlement. Payments and credits will only be issued if the Court finally approves the Settlement and any appeals are resolved in favor of the proposed Settlement. Please be patient.**

<u>**BASIC INFORMATION**</u>

I.   <u>**WHY YOU SHOULD READ THIS NOTICE**</u>

This Notice is to inform you of a proposed Settlement of all claims in the putative class action *Parsons v. Brighthouse Networks, LLC*, Civil Action No. 2:09-cv-267-AKK, in which the Plaintiff alleges that Defendant BHN engaged in a practice of requiring residential Premium Cable subscribers to lease one of its set-top boxes, and that this constitutes an unlawful tying arrangement that violates Section 1 of the Sherman Antitrust Act. BHN denies all allegations.

If you fit into the class definition above, you are deemed to be part of the Class (a "Class Member").

**If you are a Class Member and are current customer of BHN,** and you do not opt out of the Settlement, you will obtain an account credit of $30, which can be applied toward additional programming or services from BHN as set forth **here**, if the Settlement is finally approved by the Court and any appeals are resolved in favor of the Settlement. Your claims against BHN will be released as set forth **here.** You will have to elect the services you wish to apply the credit to by submitting an Election Form **here** by [DATE].

**If you are a Class Member and are a former customer of BHN,** and you do not opt out of the Settlement **and file a claim using the Claim Form available here**, you will receive a payment of $20 if the Settlement is finally approved by the Court and any appeals are resolved in favor of the Settlement. Your claims against BHN will be released as set forth **here.**

**If you are a former or current customer of BHN and you opt out of the Settlement**, you will not obtain any cash payment and will have to retain your own attorney if you wish to pursue your own claims against BHN. Instructions on how to opt out of the Settlement are available **here.**

**BECAUSE YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT, YOU SHOULD READ THIS NOTICE CAREFULLY.**

## II. WHAT THE LAWSUIT IS ABOUT, AND THE HISTORY OF THE ACTION

### A. The Claims Brought by Plaintiff

The Action was filed on February 10, 2009, in the United States District Court for the Northern District of Alabama by Plaintiff Karen Parsons, a subscriber to BHN's digital cable services. The First Amended Class Action Complaint was filed on July 6, 2009 (the "Complaint").

Since at least 2008, Plaintiff Karen Ishee Parsons has been a subscriber to cable television services provided by BHN, and purchased digital cable and paid fees for the rental of BHN equipment. The Complaint alleged that BHN requires residential Premium Cable subscribers such as Ms. Parsons to lease one of its set-top boxes as a condition for receiving the full value of the services for which they pay. Plaintiff alleged that BHN possesses market power in Premium Cable services that allows it to impose a penalty on subscribers who break the tie (*i.e.*, elect not to lease a set-top box) and to require subscribers to lease set-top boxes from BHN in order to avoid the penalty. Plaintiff contended that BHN's conduct constitutes an unlawful tying arrangement that violates Section 1 of the Sherman Antitrust Act. BHN denies all allegations. **A copy of the Complaint is available here.**

### B. Pre-Trial Proceedings

After the Amended Complaint was filed, Defendant filed its Motion to Dismiss the First Amended Complaint on July 17, 2009, and the Court denied that motion on February 23, 2010.

The Parties then conducted discovery related to class certification, that is, the issue of whether the case could be tried on a class-wide basis, with Ms. Parsons as a representative of all similarly-situated current and former customers of BHN.  On August 29, 2011, Plaintiff filed her Motion for Class Certification.  The Parties then briefed the issue of class certification, and had a two-day class certification hearing with expert testimony and argument on April 19-20, 2012. The Motion for Class Certification has not been ruled upon.

Although full-blown merits discovery has not been taken, counsel for the Parties are familiar with the relative strengths and weaknesses of their respective positions, the factual underpinnings of the claims and defenses herein, and the measure of the evidence supporting those claims and defenses.  There are no obvious issues that require further discovery to allow for an informed settlement.  The parties have recognized each others' positions regarding disputed points of law, and have entered into the Settlement based upon an appreciation of the risks of continued litigation.

### C.    Settlement Negotiations and Mediation

The Parties began negotiating a class-wide resolution of the case, through hard-fought, arm's-length settlement talks and an initial mediation before Mediator Wayne Thorpe, of JAMS. When they had reached significant agreement on most but not all of the terms of the Settlement, the Parties agreed to enter into a second mediation.  Further proceedings in the Action were stayed pending the outcome of the mediation.

On May 9, 2014, the Parties submitted Confidential Pre-Mediation Submissions to the Honorable Stanley F. Birch, Jr., formerly of the Eleventh Circuit, and set forth their respective positions in anticipation of the scheduled mediation before Judge Birch and Mr. Thorpe.  Upon commencement of the mediation, Judge Birch spoke to each side privately, extensively probing for weaknesses in each side's position, stating his views on the case, and examining the similarities and differences between this case and others that have effectively been resolved through class settlements.  After the Parties had agreed on relief for the Settlement Class, they then sought the mediators' assistance in resolving the final issue of payment of attorneys' fees and expenses.  After intense negotiations under the guidance of Judge Birch and Mediator Thorpe, the Parties reached agreement on the principal terms of the Settlement, and memorialized them in a term sheet.  Judge Birch expressly stated to both Parties that he believed the settlement to be fair, reasonable, and adequate.  Mediator Thorpe concurred.

### D.    Reasons for Settlement

The Parties have entered into this proposed Settlement with an understanding of the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. This understanding is based on: (1) the motion practice undertaken by the Parties; (2) the Parties' research and investigation of the claims; (3) the Parties' respective evaluations of the likelihood of Plaintiff's prevailing at class certification; (4) the Parties' respective evaluations of the likelihood that Plaintiff would prevail at trial; (5) the range of possible recovery; and (6) the duration of litigation necessary to prosecute this action through trial, post-trial motions, and likely appeals, and the significant uncertainties in predicting the outcome of this complex litigation.  In addition,

the Parties have taken into consideration the expressed opinions of Judge Birch and Mediator Thorpe that the Settlement is fair, reasonable, and adequate in light of similar and related litigations and settlement.  Having undertaken this analysis, the Parties have concluded that the Settlement is indeed fair, reasonable, and adequate and should be presented to the Court for approval.

## III.   WHO IS IN THE CLASS?

The Court has certified a Settlement Class defined as follows:

- All persons in the United States who subscribed to BHN for residential digital cable and paid BHN a monthly rental fee for an accompanying set-top box during the period February 2005 through the effective date of the Settlement.

Excluded from the Settlement Class are the following:

- Counsel for Plaintiffs;
- BHN officers, directors and/or employees, any entity in which BHN has a controlling interest, and the affiliates, legal representatives, attorneys, heirs or assigns of BHN;
- Any federal, state or local governmental agency; and
- The Court and the Court's immediate family members and staff.

The Court has appointed the Plaintiff, Karen Parsons, to act as Class Representative.  The Court has also appointed the Plaintiff's lawyers, the law firms of Whatley Kallas, LLP, Wiggins, Childs, Quinn and Pantazis, LLC, and Quinn, Connor, Weaver, Davies & Rouco to act as designated counsel for the Class ("Class Counsel").

## IV.   WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

### A.   The Relief to the Settlement Class

In summary, the Settlement Agreement provides for the following consideration to the Settlement Class:

1. BHN will make clear disclosures on its website and in its annual customer notices stating that, for at least the term of this agreement, any BHN subscriber may purchase a certified set-top box from a third party retailer, and BHN will allow such boxes to receive the full suite of BHN services to which the customer subscribes to the extent that the device is certified for and technically capable of doing so.  BHN will allow such set-top boxes purchased at retail to be used on its system in order to facilitate competition in the set-top box market.

2. In addition to any other discounts and rebates of any kind, current subscribers who are in good financial standing and who make their election of service by [DATE] will receive a credit to their account of $30.00, which can be applied toward additional programming or services.

3.      Former customers will be able to receive, on a claims-made basis, a cash payment of $20.  Claims will require the customer's service address, name as it appeared on the account, and approximate dates of service.

4.      While not assuming liability for the availability, design, or performance of third-party equipment or associated software, BHN will cooperate with interested manufacturers of certified set-top boxes to provide reasonable technical information needed to permit those third-party set-top boxes to operate on its system.

5.      BHN will provide notice of the above provisions to the public and to set-top box manufacturers via its website.  BHN will provide access to the OCAP standard to any interested party, which standard currently allows third-party equipment to work on BHN's systems when paired with a BHN CableCARD. BHN will allow subscribers who bring their own certified third-party equipment to self-install a BHN CableCARD free of any CableCARD installation charges.

6.      In markets with switched digital video, BHN will offer such tuning adapters as are available for use with compatible third-party equipment, to the extent necessary to receive switched digital services, for at least the term of this Agreement.

**Note**: This is just a *summary* of the terms of the Settlement.  For more information, please see **the Settlement Agreement, available here.**

## B.      The Releases and Dismissal with Prejudice

In exchange for the consideration for Class Members set forth in the Settlement Agreement, and provided the Settlement is given final approval by the Court and any appeals are resolved in favor of the proposed Settlement, the Action will be dismissed with prejudice.  The Court will enter a judgment to this effect that will bind all Class Members.  If this occurs, Class Members will release their claims against BHN as follows:

Upon the Effective Date of the Settlement (after the Settlement has been finally approved and any appeals have been resolved in favor of the Settlement), Class Members shall release the tying claims arising under Section 1 of the Sherman Antitrust Act and analogous state law claims pleaded in the First Amended Class Action Complaint, and any other claims that could have been brought, whether pleaded or not pleaded, based on or arising out of the facts set forth in the First Amended Class Action Complaint.

## V.      WHAT WILL HAPPEN AT THE FINAL FAIRNESS HEARING?

As noted above, the Final Fairness Hearing will be held on [DATE], in the [_____] Courtroom of the [BUILDING, ADDRESS].  However, the order scheduling that hearing also provides that it may be adjourned by the Court without any additional notice to putative Class Members.

At the Final Fairness Hearing, the Court will consider whether the proposed Settlement of the Action with BHN as reflected in the Settlement Agreement is fair, reasonable, and adequate

to Class Members, including considering and ruling on any objections to the Settlement that are timely raised.

The Court will also consider an application by Class Counsel for attorneys' fees in the amount of $3,7000,000, plus expenses, and for an incentive award for the Class Representative in the amount of $5,000.00.

## VI.    CAN I PARTICIPATE IN THE FINAL FAIRNESS HEARING?

Any putative Class Member who objects to the proposed Settlement with BHN, the Settlement Agreement, or the applications for attorneys' fees and expenses may appear at the Final Fairness Hearing and present such objections.  If you wish to be represented at the Final Fairness Hearing by a lawyer, you will have to retain one at your own expense. In order to object, you must, on or before [DATE], comply fully with the following requirements:

- You must file with the Court a written statement setting forth your objections to the matters to be considered and the basis for those objections, together with any documentation you want the Court to consider.  Your objection must be filed in writing with the Clerk of the Court no later than [DATE] at the following address:

  [ADDRESS]

- If you intend to appear at the Final Fairness Hearing to be heard regarding your objection, either personally or through an attorney, you must also file with the Court a written notice of intention to appear at this same time (that is, on or before [DATE]).

- On the same date, you must serve all copies of all such materials, either by hand or overnight delivery, upon the following counsel:

| | |
|---|---|
| Joe R. Whatley, Jr. | Robert G. Kidwell |
| **WHATLEY KALLAS, LLP** | **MINTZ, LEVIN, COHN, FERRIS,** |
| 2001 Park Place North | **GLOVSKY AND POPEO, P.C.** |
| 1000 Park Place Tower | 701 Pennsylvania Avenue, NW, Suite 900 |
| Birmingham, AL  35203 | Washington, DC 20004 |
| Tel: (205) 488-1200 | Telephone: 202-434-7300 |
| Fax: (800) 922-4851 | Fax: 202-434-7400 |
| | |
| *Attorneys for Plaintiff Karen Ann Ishee* | *Attorneys for Defendant* |
| *Parsons* | |

If you do not comply with the foregoing procedures and deadlines for filing and serving a written statement setting forth your objections, and a written notice of your intention to appear at the Final Fairness Hearing, if applicable, you will lose the following rights: the right to contest approval of the proposed Settlement or the application for an award of attorneys' fees and expenses to Class Counsel; the right to appear and be heard at the Final Fairness Hearing; and

the right to contest any other orders, awards, or judgments of the Court entered in connection with the proposed Settlement.

You should consult the Court's Preliminary Approval Order for additional information on the requirements for objecting to the proposed Settlement or participating in the Final Fairness Hearing. **A copy of the Preliminary Approval Order is available here**.

If the Court does not finally approve the proposed Settlement, or any appellate court modifies, vacates or reverses approval of the proposed Settlement, the proposed Settlement and the Settlement Agreement will be null and void. If there are further actions taken in the Action that affect your rights, you will receive notice as determined by the Court.

## VII.   WHAT IF I DO NOT WANT TO BE PART OF THE SETTLEMENT?

If you do not want to participate in the proposed Settlement, then you must send a written request to opt out of the Settlement to the Settlement Administrator, RG/2 Claims Administration LLC, **postmarked NO LATER THAN [DATE],** which opt-out request must include your name, address, telephone number, federal Social Security Number or Tax Identification Number, and original signature.   Opt-out requests must be submitted to:

> **RG/2 Claims Administration LLC**
> **P.O. Box 59479**
> **Philadelphia, PA  19102-9479**

**TO BE CONSIDERED TIMELY AND TO EFFECTIVELY OPT OUT OF THE SETTLEMENT, YOUR COMPLETE AND SIGNED OPT-OUT REQUEST MUST BE POSTMARKED BY NO LATER THAN [DATE].  IF IT IS NOT POSTMARKED BY THAT DATE, YOUR RIGHT TO OPT OUT WILL BE DEEMED WAIVED AND YOU WILL BE BOUND BY ALL ORDERS, AWARDS, AND JUDGMENTS ENTERED IN CONNECTION WITH THE SETTLEMENT.**

If you choose to opt out of the Settlement, you will not be entitled to receive any payment or account credit.  Your claims against BHN will not be released and you will be free to pursue any claims you believe you have (consistent with applicable law and rules of procedure) by filing a separate action against BHN on your own.  You will have to retain your own lawyer to pursue your claims against BHN.

## VIII.   WHAT IF I DO NOTHING AT ALL?

If you do nothing, you will remain a Class Member, and if the Settlement is finally approved by the Court and any appeals are resolved in favor of the Settlement, you will be bound by the release and covenant not to sue provisions of the proposed Settlement Agreement described above.

**If you are a current customer of BHN** and make your election by [DATE], you will automatically receive an account credit as described above, once the Settlement is finally approved by the Court and any appeals are resolved in favor of the Settlement.

**If you are a former customer of BHN** and you do nothing, you will not receive a check for $20.  **FORMER CUSTOMERS WISHING TO RECOVER IN THE SETTLEMENT MUST FILE A CLAIM USING <u>THE CLAIM FOR AVAILABLE HERE.</u>**

IX.    <u>**FOR MORE INFORMATION**</u>

This Notice is a summary and does not fully describe all of the terms of the Settlement. You may review the **<u>Settlement Agreement here</u>**, the **<u>Amended Complaint here</u>**, and the **<u>Preliminary Approval Order here.</u>**

If you have any questions about this Notice, you may contact the Settlement Administrator at:

    RG/2 Claims Administration LLC
    P.O. Box 59479
    Philadelphia, PA  19102-9479
    Tel: _____
    Fax: _____

Or you may contact Class Counsel:

    Joe R. Whatley, Jr.
    **WHATLEY KALLAS, LLP**
    2001 Park Place North
    1000 Park Place Tower
    Birmingham, AL  35203
    Tel: (205) 488-1200
    Fax: (800) 922-4851

    You may also view the case file at the courthouse: [BUILDING, ADDRESS]


**Dated: [DATE]**

**BY ORDER OF THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION**

*PARSONS V. BRIGHTHOUSE NETWORKS* SETTLEMENT
ONLINE ELECTION FORM
**You must complete this form online no later than [DATE]:**

## SECTION A:  CLAIMANT INFORMATION

**Name_____**
**BHN Account #_____**
**Street Address_____**
**Telephone Number_____**
**City_____ State ___ Zip Code_____**

## SECTION B: ELECTION OF SERVICES

**PLEASE APPLY MY $30 ACCOUNT CREDIT TO THE FOLLOWING SERVICES:**

FOR CUSTOMERS WHO **DO NOT** CURRENTLY SUBSCRIBE TO THE EPIX
NETWORK:

□ Minimum of four months of Epix (if the customer does not already subscribe to Epix); or

FOR CUSTOMERS WHO **CURRENTLY** SUBSCRIBE TO THE EPIX NETWORK:

□ Minimum four months of HD Pack (if the customer does not already subscribe to HD Pack).

FOR CUSTOMERS WHO CURRENTLY RECEIVE **BOTH** EPIX **AND** HD PACK:

□ Minimum two months of the Movie Pack;

**or**

□ Minimum two months of the Sports Pack.

FOR CUSTOMERS WHO CURRENTLY RECEIVE ALL OF EPIX, HD PACK, THE
MOVIE PACK, AND
THE SPORTS PACK:

□ Starz! service.

# EXHIBIT 7

## CLAIM FORM FOR *PARSONS V. BRIGHT HOUSE NETWORKS, LLC ("BHN")* SETTLEMENT

You must read the Notice of Proposed Settlement before completing this Claim Form.  The capitalized terms used in this Claim Form are defined in the Settlement Agreement.  A Settlement Class Member may file only one Claim Form.

**SECTION A:  CLAIMANT CURRENT CONTACT INFORMATION**

| *Full Name (Last, Middle, First)* | *Last four digits of Social Security #* |
|---|---|
| *Current Telephone number* | |
| *Current Mailing Address (Street, PO Box, Suite or Office Number, as applicable)* | |

| *City* | *State* | *Zip Code* |
|---|---|---|
| | | |

**SECTION B: CLAIMANT'S BRIGHT HOUSE NETWORKS SERVICE INFORMATION**

| *Full Name as it Appeared on Your BHN Account (First, Middle, Last)* | | |
|---|---|---|
| *Approximate dates of your subscription with BHN (for example, from June 2008 to July 2009)* | | |
| *Residential Address at Which You Had Bright House Networks Service (include apartment/suite/ unit number)* | | |
| *City* | *State* | *Zip Code* |

**SECTION
C: CERTIFICATION AS SETTLEMENT CLASS MEMBER**

**I am a Settlement Class Member.**
☐    By checking the box to the left, I certify that I have reviewed the Notice of Proposed Settlement and that I am a Settlement Class Member as described in the Notice of Proposed Settlement and defined in the Settlement Agreement, and that I am no longer a customer of Bright House Networks, LLC.  I also certify that I was the named subscriber to the Bright House Networks services identified above, and that no other person has the right to claim this award.

**SECTION D:  CERTIFICATION OF ACCURACY AND TRUTHFULNESS OF STATEMENTS**

I do declare and certify, under penalties of perjury, that all of the statements and information provided in this Claim Form are true, correct and complete, to the best of my knowledge.

_____          _____
              Signature                                                       Date

**Claims should be sent to the Settlement Administrator at:**

**RG/2 Claims Administration LLC**

**P.O. Box 59479**

**Philadelphia, PA  19102-9479**

YOU MUST COMPLETE AND SIGN THIS CLAIM FORM, AND THE ENVELOPE RETURNING YOUR CLAIM FORM MUST BE MAILED TO THE SETTLEMENT ADMINISTRATOR WITH A POSTMARK DATE *NO LATER THAN* [DATE].

IF YOUR SIGNED CLAIM FORM IS NOT MAILED TO THE SETTLEMENT ADMINISTRATOR BY THIS DEADLINE, YOU WILL BE DEEMED TO HAVE WAIVED YOUR RIGHT TO RECEIVE ANY PAYMENT FROM THE SETTLEMENT FUND.

WE STRONGLY RECOMMEND SENDING YOUR CLAIM FORM VIA REGISTERED OR CERTIFIED MAIL AND RETAINING YOUR RECEIPT AND A COPY OF YOUR CLAIM FORM FOR YOUR RECORDS.

If you have any questions, please call the Settlement Administrator at [PHONE]