FILED
2015 Feb-05  PM 01:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **KAREN PARSONS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | |
| | ) | **2:09-cv-267-AKK** |
| **BRIGHTHOUSE NETWORKS, LLC** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER GRANTING CONSENT MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
## FOR AN INCENTIVE AWARD, AND FOR AN AWARD
## OF ATTORNEYS' FEES AND EXPENSE, AND FINAL JUDGMENT

The court having reviewed and considered the Consent Motion for Final Approval of Class Action Settlement, for an Incentive Award, and for an Award of Attorneys' Fees and Expenses submitted by Plaintiff Karen Parsons, as amended by Plaintiff's First Amendment to Consent Motion for Final Approval of Class Action Settlement, for an Incentive Award, and for an Award of Attorneys' Fees and Expenses (the "Motion"), as well as the supporting documents, in the above-captioned case (the "Action"); and having reviewed and considered the proposed settlement (the "Settlement"), as set forth in the Settlement Agreement dated August 11, 2014, submitted as Exhibit A to the Joint Motion for Preliminary Approval of Settlement Agreement and Approval of Form and Content of Notice

1

to Class Members (Doc. 92-1) (the "Settlement Agreement"); and having held a final fairness hearing on January 30, 2015 (the "Final Fairness Hearing); the court makes the following findings:

## I.   **FINDINGS**

1.    Capitalized terms used in this Final Approval Order that are not otherwise defined herein have the meaning assigned to them in the Settlement Agreement.

2.    The court has jurisdiction over the subject matter of this Action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Moreover, this court has personal jurisdiction over the defendant, Bright House Networks, Inc ("BHN").[1]

3.    Since the court's preliminary approval of this Settlement, all Settlement Class Members have been provided notice in accordance with the court's Preliminary Approval Order (Doc. 94). (See Declaration of Melissa E. Baldwin ("Baldwin Decl.") (attached as Exhibit E to the Declaration of Joe R. Whatley, Jr. filed in support of the Motion (Doc. 101-1) (the "Whatley Decl.") ¶¶ 2-13).

4.    The Settlement Class is defined as follows:

>        all persons in the United States who subscribed to BHN
>        for digital cable and paid BHN a monthly rental fee for

---

[1] Plaintiff and BHN together are referred to herein as the "Parties."

an accompanying set-top box during the period February 2005 through the date of preliminary approval of the settlement, and who did not timely request exclusion from the Settlement Class.

5.     The court finally finds and concludes, for settlement purposes only, that: (a) the Settlement Class Members are so numerous as to make joinder of them impracticable; (b) there are questions of fact and law common to the Settlement Class; (c) Class Representative's claims and the defenses asserted thereto are typical of the claims of Settlement Class Members and the defenses asserted thereto; (d) the Class Representative and Class Counsel have fairly and adequately protected the interests of Settlement Class Members throughout this action; and (e) a class action is superior to all other available methods for fairly and efficiently resolving this action and provides substantial benefits to both the litigants and the court.  The court therefore determines that this action satisfies the prerequisites for class certification for purposes of settlement, pursuant to Fed. R. Civ. P. 23(b)(3), and the court finally certifies the Settlement Class for settlement purposes.

6.     The Notice: (i) constituted the best notice to members of the Settlement Class that was practicable under the circumstances; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class members of the terms of the Settlement, their right to object and to appear at the Final Fairness Hearing or to exclude themselves from the Settlement, and the binding effect of the Settlement; (iii) was reasonable and

constituted due, adequate and sufficient notice to persons affected by and/or entitled to participate in the Settlement and Final Fairness Hearing; and (iv) fully complied with the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

7.     As of January 5, 2015, thirteen (13) potential Settlement Class Members have opted out of the Settlement, and only two valid objections to the Settlement have been filed.

8.     The court has held the Final Fairness Hearing to consider the fairness, reasonableness and adequacy of the Settlement, and provided the objectors to present their arguments at the Final Fairness Hearing.

9.     Based on the record before it and the arguments heard at the Final Fairness Hearing, the court hereby OVERRULES the objections, for the reasons set forth below.

10.     Based on the record before it, the court finds that the Settlement is the product of good faith, arm's-length negotiations between the Parties.

11.     Also based on the record before it, the court finds that the Settlement, as provided for in the Settlement Agreement, is in all respects fair, reasonable, adequate and proper and in the best interest of the Settlement Class.

A.      **The Settlement Satisfies the Six Factors Set Forth by the Eleventh Circuit for Determining Whether a Settlement is Fair, Adequate and Reasonable.**

12.     The Eleventh Circuit has set forth six factors to consider in determining whether a proposed settlement is fair, adequate, and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *Bennett v.Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (citing cases).  The court finds that these factors all weigh in favor of approving the Settlement.

1.      **The Likelihood of Plaintiff's Success at Trial**

13.     As to the first *Bennett* factor, the likelihood of Plaintiff's success at trial, the court finds that this case involves complex legal and factual issues that have been hotly contested, and would almost certainly continue to be hotly contested throughout the remaining litigation of the Action. When they reached agreement on the terms of the Settlement, the Parties had briefed and argued class certification, but had not yet even begun merits-related discovery, which undoubtedly would be a lengthy and expensive undertaking for both Parties. Thus, while counsel for the Parties had become familiar enough with the legal and factual issues in the case to do a thorough assessment of their respective chances for

success and the risks involved in continuing to litigate the Action, there remained a great deal to be done in the Action before final resolution could be had. The outcome on class certification and the ultimate outcome on the merits were uncertain for both Parties. Accordingly, this factor supports final approval of the proposed Settlement.

### 2. The Possible Range of Recovery at Trial, and the Settlement Amount in Relation to the Possible Range of Recovery

14.    The second and third factors, the possible range of recovery at trial, and the Settlement amount in relation to the possible range of recovery, also support final approval.

15.    Plaintiff's and the class's potential range of recovery is hotly disputed in this Action. Assuming that, despite BHN's challenges to Plaintiff's damages calculations, Plaintiff could prove damages at the low end of Plaintiff's expert's original estimate – $1.00 per month per customer, or $50 per customer total, the Settlement provides a substantial recovery that is fair and adequate under relevant case law. This is true notwithstanding the fact that, if Plaintiff and the class were fully successful in proving liability and the amount of their actual damages, such damages would be trebled under the Sherman Anti-Trust Act, 15 U.S.C. § 1, bringing the total potential damages to $150 per customer.

16.    As part of the Settlement consideration, each Settlement Class Member who is no longer a subscriber and files a claim will receive $20 in cash (more than 13% of the potential treble damages), and a Settlement Class Member who is a current subscriber will get a $30 account credit as part of the Settlement (20% of the potential treble damages). Courts have frequently found such recoveries to be fair and adequate. *See, e.g., In re Checking Account Overdraft Litigation,* 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ("[S]tanding alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims."); *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988)("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig*., 1998 WL 765724, *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery ... seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig*., 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig*., 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003); *Bennett,* 787 F.2d at 986 (monetary relief of 6% of potential total recovery adequate in antitrust case where injunctive relief also part of settlement).

17.    As the Settlement avoids the risks of protracted litigation and provides Settlement Class Members with certain, immediate relief, this factor supports approval of the Settlement in this case.

18.    Significantly, the monetary relief to Settlement Class Members is only one aspect of the Settlement's consideration. BHN has also agreed to provide prospective relief designed to correct the antitrust issues that Plaintiff alleged. BHN has agreed to provide support of third-party cable set-top boxes and reasonable notice of its new policies on its website. This prospective relief adds a great deal of value to the Settlement for all Settlement Class Members who are current subscribers.

19.    Assuming that BHN's business practices changes going forward will save customers the same $1 per month per customer that was used to estimate potential damages, each customer is receiving that value for the term of the Settlement Agreement, which runs through September 1, 2018 (Settlement Agreement ¶ 7a), approximately 3.33 years. At one dollar per month, the injunctive relief is valued at $12.00 per year, or $40 over the term of the Settlement Agreement. Added to the $30 available to each current customer, that brings the value of the settlement to each Settlement Class Member who is a current customer to $70, which is approximately 46.7% of the potential treble damages of $150 per existing customer.

20.    Given that the Settlement immediately restores to Settlement Class Members a substantial percentage of the potential damages in this case, and corrects the conduct complained of in the Complaint, the court finds that the Settlement provides a substantial recovery for the Settlement Class as compared to the possible range of recovery at trial.

### 3.    The Complexity, Expense, and Likely Duration of Continued Litigation

21.    As to the fourth *Bennett* factor, the complexity, expense, and likely duration of continued litigation, the complexity of antitrust cases such as this one is well known. If this Settlement is not approved, a substantial amount of work will need to be performed by both Parties, including the completion of fact and expert discovery, briefing motions for summary judgment, designation of witnesses and exhibits, preparation of pretrial memoranda and proposed findings of fact and conclusions of law, presentation of witnesses and evidence at trial, and briefing a probable appeal regardless of the trial's outcome.

22.    Furthermore, because of the complexity of the issues, both Parties would be required to consult with numerous experts to better understand and support or defend the allegations of the Complaint and the damages calculations. Given the nature of this case, any judgment at trial would likely be appealed by the losing party. As a result, continued litigation would have risked delaying the class's potential recovery for years, further reducing the value of any such

recovery. The Settlement resolves the case without any further delay and will, if finally approved, offer the Settlement Class an immediate and certain recovery, as well as correcting the practices complained of in the Complaint. Thus, this factor also speaks strongly in favor of final approval of the proposed Settlement.

### 4.    Opposition to the Settlement

23.    The fifth *Bennett* factor, the substance and amount of opposition to the settlement, also weighs in favor of final approval here.  Despite individual notice to over 3.6 million Settlement Class Members, only 13 Settlement Class Members have opted out, and there have been only two effective objections to the Settlement.[2] These numbers are strong indicators of the fairness of a settlement. *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co*., 211 F.R.D. 457, 617 (S.D. Fla. 2002). Having reviewed all the written objections submitted, including those that were not filed with the court, having heard argument on the properly filed objections at the Final Fairness Hearing, and for the reasons set forth below, the court hereby OVERRULES the objections.

---

[2] While additional Class Members purported to object, none of their purported objections were filed with the court, as they were required and instructed to do by the Preliminary Approval Order and by the court-ordered Notice. One additional purported objection was received from Mr. Larry Vander Boegh, who is not a Class Member. (*See* Baldwin Decl. ¶ 18, Ex. F).

### a.   The objections to the Settlement as providing insufficient relief are OVERRULED.

24.   The two objections that were properly filed and the five "unofficial" ones that the claims administrator, RG/2, received via various means all say essentially the same thing: that instead of account credits towards services the customer does not yet have, customers should receive a cash refund of set-top box fees that BHN charged them. However, such an objection is not based on any valid theory of recovery. In a tying case such as this one, alleging that the harm to the customer is the reduction in quality of the products he receives as a penalty for breaking the illegal tie, the only compensation one could receive in litigation is the value of the difference in quality, not all fees associated with leasing a set top box. The calculation of the resulting "overcharge" is far more complex than what the objectors are suggesting, and in any event would never result in a full refund of all fees.

25.   Moreover, while certain putative objectors would prefer a cash refund or straight account credit over a credit towards additional services, the reality of settlement is that what can be obtained through negotiation is, by its very nature, a compromise, and thus is normally something less than one's ideal recovery. *Bennett,* 737 F.2d at 986 (a district court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that *compromise is*

*the essence of settlement*.") (emphasis added). The discount off potential recovery is given in exchange for a guaranteed, immediate recovery without the risks, delay and expense of litigation.

26.    In any event, the value to current and former customers here is real and substantial, as set forth above.

27.    The objectors also ignore the valuable prospective relief that is at the heart of this Settlement, which, as is discussed above, increases the value of the Settlement to current customers significantly. BHN has agreed to provide injunctive relief designed to fully resolve the antitrust tying claims alleged by Plaintiff.  (Settlement Agreement ¶¶ 18-19).  Crucially, BHN has agreed to provide support of third-party cable set-top boxes and reasonable notice of its new policies on its website.  (*Id.* ¶ 7a).  Significantly, the one objector who appeared at the Final Fairness Hearing expressly stated that she did not object to the injunctive relief provided by the Settlement.

28.    Accordingly, the objections arguing that the relief to the Settlement Class is insufficient are OVERRULED.

> **b.    Rule 23(h) and the requirements of due process are satisfied here.**

29.    Several additional objections were raised in the written objection filed by Settlement Class Member Cathy Smith (the "Smith Objection" or "Objection")

through her attorney, Frank H. Tomlinson. Doc. 95.  Mr. Tomlinson appeared and argued at the Final Fairness Hearing.

30.    First, Smith argued in her Objection that the deadline for the submission of Class Counsel's fee application should have come before the deadline for objections, so that Settlement Class Members would have had an opportunity to review and evaluate the bases for the fee request prior to objecting or deciding to opt out of the Settlement. Doc. 95 at 5 (citing 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009) and *Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010)); *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) (following *Mercury Interactive* to find that the filing of the attorneys' fee motion after the objection deadline "violated the rule.").

31.    Smith argues that the schedule that was followed in this case violated Rule 23(h) of the Federal Rules of Civil Procedure.  Rule 23(h)(1) provides that "[a] claim for an award must be made by motion under Rule 54(d)(2), ... at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

32.    As is observed in McLaughlin on Class Actions, "courts are divided on whether the Rule's mandate that class members be given sufficient notice of the motion and sufficient opportunity to object to the motion requires the district court

to set the deadline for any objections to counsel's fee request on a date after the fee application and documents supporting it have been filed by class counsel." 2 McLaughlin on Class Actions § 6:24 (11th ed.). While the Ninth Circuit held in *Mercury Interactive* that it was an abuse of discretion to require the submission of written objections before the deadline for class counsel to file its application for attorney's fees, 618 F.3d at 993, as one court in this Circuit pointed out, "that rule is not universal, and the rule has been rejected by at least one other Circuit. *See Cassese v. Williams,* 503 Fed. Appx. 55, 57 (2d Cir. 2012). The Eleventh Circuit has not decided this issue." *Saccoccio v. JP Morgan Chase Bank, N.A*., 297 F.R.D. 683, 699 (S.D. Fla. 2014).  As *Mercury Interactive* is neither binding on this court nor persuasive to this court, the court rejects Smith's argument based on the *Mercury Interactive* holding.

33.    Courts commonly set schedules wherein the attorneys' fee motion is due after the deadline for opting out, with the fee motion to be considered and, if necessary, argued at the Final Fairness Hearing, as was done here.  *Saccoccio*, 297 F.R.D. at 688, 690 (S.D. Fla. 2014) (objection deadline twelve days before fee application deadline); *In re CertainTeed Fiber Cement Siding Litigation*, 303 F.R.D. 199, 222 (E.D. Pa. 2014) (fee petition filed after objection deadline but three weeks before final fairness hearing); *In re Leadis Tech, Inc. Sec. Litig.,* No. C 05–0882 CRB, 2006 WL 496039 (N.D. Cal. Feb. 4, 2009) (objections due thirteen

14

days before motions in support of fee); *In re Brocade Sec. Litig.,* No. C 05–02042 CRB, 2008 WL 2050847 (N.D. Cal. Nov. 18. 2008) (objections due seven days before motions in support of fee); *In re Cisco Sys., Inc. Sec. Litig.,* No. C 01–20418 JW, 2006 WL 6927885 (N.D. Cal. Sept. 12, 2006) (objections due 28 days before motions in support of fee); *In re Tyco Int'l, Ltd., Sec. Litig.,* No. MDL 02–1335 PB, 2007 WL 7752070 (D.N.H. July 13, 2007) (objections due 24 days before motions in support of fee); *see also Mashburn v. National Healthcare, Inc*., 684 F. Supp. 679 (N. D. Ala. 1988) (overruling objection based on objector's not having received itemization of counsel's fees prior to objection deadline, where objector subsequently received copy of fee petition, memorandum, and the supporting affidavits and exhibits).

34.    In *Casses v. Williams*, 503 Fed. Appx. 55, 57 (2d Cir. 2012), the Second Circuit rejected the bright-line rule articulated by the Ninth Circuit in *In re Mercury Interactive*, and held that, under the facts before it, due process and Rule 23(h) were satisfied despite the deadline for objections having come before the filing of the motion for attorneys' fees. There, as here, the notice sent to the class informed class members that class counsel would seek a fee not to exceed a specific, stated amount, along with expenses not to exceed a specific, stated amount.  There, as here, "class counsel requested fees and costs in the precise amounts specified in the settlement notice and divulged additional information

regarding counsel's billing rates, hours worked, and tasks performed." *Id.* at 58. There, "objectors then had two weeks to crystallize their objections and request further information before attending the fairness hearing." *Id.* Here, objectors had three weeks to do so. Accordingly, here, as in *Cassese,* there is no violation of due process or of Rule 23(h) in the scheduling of the motion for attorneys' fees. *Id.* (*citing Carlson v. Xerox Corp.,* 355 Fed. Appx. 523, 525 (2d Cir. 2009) (summary order) (concluding under similar circumstances that notice of class counsel's fee motion "was reasonably directed to class members as required by Rule 23")).

35.    Similarly, in *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 222 (E.D. Pa. Mar. 20, 2014), the court held that, where the fee petition was filed three weeks before the final fairness hearing, and class counsel had notified the court in their motion for preliminary approval that they would seek the amount of fees that they ultimately sought, the class objectors "had a full and fair opportunity to argue their objections about the specifics of the fee petition at the fairness hearing," even though the objection deadline preceded the filing of the fee petition.

36.    Here, Class Counsel's motion for attorneys' fees and supporting documents were submitted on January 9, 2015, a full three weeks prior to the Final Fairness Hearing, and Smith did not respond in any way to that submission prior to the Final Fairness Hearing.  Notably, in her Objection, Smith expressly "reserve[d]

16

the right to comment further on Plaintiff's request for attorneys' fees until after Plaintiff has filed her moving papers, and additional information is made available." Doc. 95 at 10.  However, over the course of three weeks, Smith chose *not* to "comment further" on Plaintiff's request, making her objection in this regard ring hollow.

37.    In *Saccoccio,* the court overruled a similar objection by a class member who claimed it was an abuse of discretion to set the objection deadline to be before the deadline for the motion for attorneys' fees.  The *Saccoccio* court noted that the facts before it "follow[ed] the path worn by class attorneys in *Cassese*," in that the court's preliminary approval order stated that class counsel would apply for attorney's fees not to exceed $20 million, the notice sent to class members stated that the attorneys would apply for fees not to exceed $20 million, class counsel applied for fees and expenses in the amount of exactly $20 million, and two weeks after the filing of the fee motion, the court held a final fairness hearing where the fee application was argued.  297 F.R.D. at 699.  Because "[a]ny objectors … had … weeks to crystallize their objections and request further information before attending the fairness hearing," there was "no due process denial or abuse of discretion."  *Id.* (quoting *Cassese*, 503 Fed. Appx. at 58). Here, the court's preliminary approval order stated that class counsel would apply for attorneys' fees and expenses not to exceed $3.7 million, the notice sent to class

members stated that the attorneys would apply for fees and expenses not to exceed $3.7 million, Class Counsel applied for fees and expenses in the amount of $3.7 million, and three weeks after the filing of the fee motion, the court held a final fairness hearing where the fee application was argued. These facts, which likewise "follow[] the path worn by class attorneys in *Cassese,*" lead this court to conclude that there has been no abuse of discretion or violation of due process in this case.

38.    Accordingly, this court does not read the notice requirement of Rule 23(h) as requiring that the deadline for objections come after the filing of a motion for attorneys' fees.  Smith has had adequate notice of the fee petition and has had a full and fair opportunity to argue her objections about the specifics of the fee petition at the fairness hearing.  As both Rule 23(h) and the requirements of due process were satisfied here, the Smith Objection in this regard is hereby OVERRULED.

### c.    The Settlement is not a "coupon settlement."

39.    The Smith Objection also argues that the Settlement is a "coupon" settlement and thus is subject to greater scrutiny by this court. However, the court finds that this is *not* a coupon settlement, as former customers who file claims will receive *cash payments* of $20 each, and current customers will not receive "coupons" either, as that term is used in the "Coupon settlements" section of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712.

40.     As the court observed in *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 54 n.16 (D.D.C. 2010), "[a]lthough Congress did not define the term 'coupon' in [CAFA], which sets forth restrictions on 'coupon' settlements, courts have generally considered a coupon settlement to be one that provides benefits to class members in the form of a *discount* towards the future purchase of a product or service offered by the defendant." *Id.* (emphasis added) (citing *Fleury v. Richemont N. Am., Inc.*, 2008 U.S. Dist. Lexis 112459 (N.D. Cal. Aug. 6, 2008)); *see Chaikin v. Lululemon USA, Inc.*, 2014 WL 1245461, at *3 (S.D. Cal. March 14, 2014) (distinguishing "credit vouchers," which require no additional purchase to redeem, and therefore operate like cash, from "coupons" which provide a discount or subsidy toward a larger purchase).

41.     Moreover, as courts have observed, coupon settlements "often do not provide meaningful compensation to class members; they often fail to disgorge ill gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation." *True v. American Honda Motor Corp.,* 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010), quoting *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007). The account credits offered to current customers in this Settlement do not fit this description.

42.    Here, the account credits offered by BHN are not *discounts* off the purchase of services; they are essentially the equivalent of cash that can be spent to purchase new services outright, *without spending any of the customers' own money. See Chaikin v. Lululemon USA. Inc.*, No. 3:12-cv-02481-GPC-MDD, 2014 WL 1245461, at *3 (S.D. Cal. Mar. 17, 2014); *Foos v. Ann, Inc.*, No. 11cv2794 L (MDD), 2013 WL 5352969, at *2 (S.D. Cal. Sept. 24, 2013) (stating "the distinction between a coupon and a voucher is that a coupon is a *discount* on merchandise or services offered by the defendant and a voucher provides for *free* merchandise of services.") (emphasis in original).  Paragraph 8 of the Settlement Agreement specifies that current customers will receive a credit to their account of $30.00, which will completely cover the cost of several months' worth of additional programming or services, including Epix, HD Pack, Movie Pass, Sports Pass, or the Starz! service.

43.    Significantly, each of these services costs $15 or less per month, and thus can be purchased using the $30 account credit without the outlay of any additional money by the customer. As is reflected in the Declaration of Michelle Stuart, Vice President of Marketing at BHN (attached as Exhibit F to the Whatley Decl. (Doc.101-1) (the "Stuart Decl."), BHN's current monthly pricing on the offered services is as follows: Epix, $5.00; HD Pack, $6.00-$6.99; Movie Pass, $10.00; Sports Pass, $10.00; Starz!, $15.00. (Stuart Decl. ¶ 2). Thus, current

customers will get their selected services for two to six months *free of charge*. That is not a "discount," and the account credits are not "coupons." *See* Edward F. Sherman, Class Actions After the Class Action Fairness Act of 2005, 80 Tul. L.Rev. 1593, 1615 (2006) (where no additional purchase is necessary, credits are not "coupons" as Congress had intended that term to mean).

44.     As set forth above, the account credits provide meaningful compensation to Settlement Class Members, with the value of the credit representing 20% of the potential treble damages per customer. Moreover, the current customers who will receive these credits have already chosen to continue to do business with BHN, not in order to redeem the credits, but because they have already chosen to continue to use BHN for independent reasons. To redeem the credits, customers need only make an election of services, and the credit is automatically applied to future charges for those services. This is straightforward, monetary relief that does not incentivize a customer to do business with BHN; the decision to do business with BHN has already been made by the customers entitled to this compensation. Accordingly, the court finds that the Settlement is not a "Coupon settlement."

> **d.     Even if this were a "Coupon settlement," the requested fee would be proper.**

45.     Smith relies upon the attorneys' fees provisions of the "Coupon settlements" section of CAFA, 28 U.S.C. § 1712, for her argument that the fee here

must be calculated on the basis of the value of *redeemed* coupons only, meaning that the court must wait until it sees how many coupons are actually redeemed by the Settlement Class before approving the requested attorneys' fees.  Specifically, Smith relies on subsection 1712(a), which expressly addresses "Contingent fees in coupon settlements."  However, even if this *were* a coupon settlement, which it is not, the requested fee is *not* a contingent fee, but rather is a negotiated fee agreed to by BHN in recognition of the fee-shifting provisions of the Sherman Antitrust Act.  The fee does not come out of the relief afforded to the class, but is to be paid *in addition to* the value to the class.

46.    Thus, even if this *were* a "coupon settlement," Class Counsel would still be entitled to a fee award based upon the lodestar/multiplier method, under 28 U.S.C. § 1712 (b).  Subsection (b) of the "Coupon settlements" section of CAFA expressly deals with "Other attorney's fee awards in coupon settlements." It states, in relevant part: "[i]f a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action. . . . Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees." 28 U.S.C. § 1712 (b) (1) and (2).

47.     Despite this clear language authorizing the use of the lodestar method in determining fees in coupon cases, Smith argued at the Final Fairness Hearing that only fees attributable to the injunctive relief portion of the Settlement may be calculated based on a lodestar/multiplier approach.  In her Objection, Smith cites the Ninth Circuit's opinion in *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013), in support of her argument that, in a settlement that involves both coupons and injunctive relief, the portion of the attorneys' fees attributable to the coupons must be calculated based on the value of the coupons actually redeemed by class members.  Smith therefore argues that this court must wait until the value of the redeemed coupons has been determined in order to do that valuation.[3]  But

---

[3] Smith also cites *Redman v. Radioshack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) in purported support of her position that "the court must wait until all coupons have been redeemed to determine the actual value of the settlement, and award fees accordingly."  Doc. 95 at 10.  But *Redman* says no such thing.  Instead, the *Redman* court opined that CAFA, "a badly drafted statute," *could* be interpreted as preventing counsel from being paid until a settlement is fully interpreted *or* as permitting the settlement to be valued based on "the face value of the coupons received by class members who responded positively to notice of the class action." *Redman*, 786 F.3d at 633-34.  The court went on to conclude that "[t]here is no need for a rigid rule," and that courts should consider what works best in a given case, including the possibility of permitting a "part payment to class members and class counsel up front, with a final payment when the settlement is wound up." *Id.* at 634.

    Notably, the *Redman* court expressly *declined* to "tak[e] sides" between the Ninth Circuit's interpretation of CAFA's fee provisions as allowing the lodestar method only as to injunctive relief and that of other courts as allowing the lodestar method to be used in all situations.  *Id.* at 635. The court observed that even in a lodestar/multiplier analysis of non-injunctive relief, the value of the result to the class is a factor that a district court must consider, *id.*, and thus it likely would not "make much difference" whether the court used subsection (b)(1)'s approach even in all-coupon cases. *Id.* Because the *Redman* case involved a contingent fee *greater than* the purported face value of the coupons to the class, if the court were to evaluate the fee there under a lodestar/multiplier method, it would still have to consider the result achieved by class counsel, and the requested fee still would not be justified.  *Id.*

while the *In re HP Inkjet* court did interpret CAFA's attorneys' fees provisions as Smith suggests, this court is not bound by that decision, and finds it unpersuasive.

48.    Indeed, most courts, including courts in this Circuit, have found that the CAFA statute allows for the calculation of fees in a coupon settlement using the lodestar-multiplier method, even for non-injunctive relief. *See, e.g., Blessing v. Sirius XM Radio,* 507 Fed. Appx. 1, 4 (2d Cir. 2012) ("Even assuming that the coupon provisions of CAFA were applicable, the district court's approval of the proposed settlement and the attorneys' fee award was appropriate.... The district court approved the fee award after determining it was reasonable under the lodestar method ... and is therefore consistent with CAFA."); *Radosti v. Envision EMI, LLC,* 760 F. Supp. 2d 73, 77–78 (D.D.C. 2011) ("The statute explicitly contemplates application of the lodestar method with a multiplier, but it does not explicitly require that approach."); *Perez v. Asurion Corp.,* 2007 WL 2591180, at *2 (S.D. Fla. Aug. 8, 2007) ("CAFA gives the court the discretion to award fees using the lodestar method.").

49.    The CAFA statute merely requires that *if* fees are to be calculated as a percentage of the value of the coupons in a coupon settlement, that percentage must be calculated based on the value of coupons *redeemed* by the class, rather than the value of the coupons *made available* to the class.  CAFA subsection 1712(b), quoted above, makes clear that  "if … a portion of the recovery of the

coupons is *not* used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action." (Emphasis added). In this court's opinion, both the plain language of the statute and the legislative history of the statute support no interpretation other than that fees may be calculated in a coupon settlement *either* as a contingent fee based on the value of redeemed coupons *or* under a lodestar/multiplier method.

    50.    In *In re Southwest Airlines Voucher Litigation*, 2013 WL 5497275 (N. D. Ill. Oct. 3, 2013) – which Smith herself cites – the court explained at length its reasons for rejecting the *In re HP Inkjet* court's reading CAFA's attorneys' fees provisions to the contrary:

> The Ninth Circuit majority … determined that [CAFA] subsection 1712(b) applies only when a class settlement involves "mixed" relief—both coupons and non-coupon relief. *Id.* at 1183. It concluded that "a district court may award lodestar fees under subsection (b)(1) but only where the settlement is based 'in part' on coupon relief." *Id.* at 1184. The majority appears to have concluded that under subsection 1712(b), a court may award a lodestar-type fee only on the non-coupon part of a mixed settlement but must base a fee on the coupon part of such a settlement exclusively on the redeemed value of the coupons. *Id.* at 1183.

> As the court has indicated, it does not agree with this limitation on subsection 1712(b). The court believes that the Ninth Circuit majority read that provision contrary to its plain language. The "attributable to" language used in subsection 1712(a) does not appear in 1712(b). Rather, the statute says, in a straightforward way, that if a portion (percentage) of the coupon recovery is not used to determine the attorney's fee, the lodestar method shall be used. The court does not see how this can appropriately be read as *precluding* a lodestar-type award in a coupon settlement case.

51.    This court finds the foregoing analysis logical and persuasive. The

*Southwest Airlines* court went on to explain:

> To the extent there is an ambiguity in section 1712, it is resolved by the
> overall structure of the statute and the various subsections' titles. *See Fla.
> Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008)
> ("[S]tatutory titles and section headings are tools available for the resolution
> of a doubt about the meaning of a statute.") (internal quotation marks
> omitted). The three subsections are entitled, respectively, "Contingent fees
> in coupon settlements," "Other attorney's fee awards in coupon settlements,"
> and "Attorney's fee awards calculated on a mixed basis in coupon
> settlements." These titles indicate that the three provisions are constructed as
> parallel methodologies that are available as alternatives when a class
> settlement involves recovery of coupons. If the plaintiff proposes a fee
> award based on a percentage of the value of the coupons, the award, under
> subsection 1712(a), may be based only on the value of the coupons actually
> redeemed. The term "contingent fee" in the heading of subsection 1712(a)
> supports this interpretation, as such fees are generally calculated as a
> percentage of the clients' recovery. In short, subsection 1712(a)'s purpose
> and effect is to preclude basing an attorney's fees on a percentage of the face
> (*i.e.* unredeemed) value of coupons.
>
> *But the plaintiff is not limited to a coupon-value-based fee award; under
> subsection 1712(b), the plaintiff may seek a lodestar-based fee*. As with
> subsection 1712(a), the heading of subsection 1712(b) also refers without
> limitation to fees awarded "in coupon settlements." Comparison of the two
> titles thus supports a reading of the two subsections as alternative
> methodologies for determining fee awards in coupon settlement cases.
> Further, subsection (b)(1) includes the exact same language used in the
> introduction of subsection 1712(a): "If a proposed settlement in a class
> action provides for a recovery of coupons to class members...." The use of
> this parallel phrasing further indicates that subsections (a) and (b) describe
> alternative methodologies.
>
> Finally, under subsection 1712(c), in cases involving both coupon and
> equitable relief, both methods of fee calculation may, but need not, be used.
> This is made clear by the language in each subparagraph that refers to "that

portion of the attorney's fee " calculated as either "based upon a portion of the recovery" or "not based upon a portion of the recovery." *Id*. § 1712(c)(1)-(2) (emphasis added). The statute thus creates the option of calculating an attorney's fee award in a mixed relief case via the lodestar method, as a purely contingent fee, or as a combination of the two. In short, mixed relief does not compel mixed calculation.

2013 WL 5497275 at *6 (emphasis added). This court finds this analysis persuasive, and agrees with it.

52.    Had Congress intended in the CAFA "Coupon settlements" section to limit the use of the lodestar with multiplier method solely to the injunctive relief portion of a mixed coupon/injunctive relief settlement, it simply could have drafted one subsection addressing contingent fees based on the value of redeemed coupons and another addressing fees in mixed cases.  Instead, Congress expressly allowed for three options: contingent fees based on the value of redeemed coupons, fees based on lodestar, and fees based on a combination of the two.  This court rejects Smith's strained reading of the statute to the contrary.

53.    Further, as the *Southwest Airlines* court also pointed out, 2013 WL 5497275 *7, CAFA's legislative history further supports this reading of CAFA's attorneys' fees provisions, to the extent there is any ambiguity.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 567 (2005) (noting that where a statute is ambiguous, a court "should look to other interpretive tools" including legislative history). The 2005 Senate Report states:

... Section 1712(a) states that in class action settlements in which it is *proposed that an attorney fee award be based solely on the purported value of the coupons awarded to class members*, the fee award should be based on the demonstrated value of coupons actually redeemed by the class members....

In some cases, the proponents of a class settlement involving coupons may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement. Instead, *the settlement proponents may propose that class counsel fees be based upon the amount of time class counsel reasonably expended working on the action*. Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis in connection with a settlement based in part on coupon relief. As is stated on its face, nothing in this section should be construed to prohibit using the "lodestar with multiplier" method of calculating attorney's fees.

S. Rep. No. 109–14 at 30 (2005) (emphasis added).

54.   As the *Southwest Airlines* court noted, this "makes clear that subsection 1712(a) governs only *how* attorney's fees based on the percentage of recovery must be calculated, not *whether* a percentage of recovery must be used." 2013 WL 5497275 at *7 (emphasis in original).

55.   Accordingly, even if this court were to determine that the Settlement is a "coupon settlement" subject to CAFA's attorneys' fees provisions, which it is not, Class Counsel would still be entitled to seek fees based upon the lodestar method.

56.   Moreover, as discussed above, the Settlement Agreement provides substantial injunctive relief that benefits the class by resolving the allegedly anti-competitive activity at the center of Plaintiff's antitrust tying claims.   Even as

28

interpreted by the Ninth Circuit in *HP Inkjet Printer Litig*., pursuant to § 1712(c), the lodestar method approved in § 1712(b) applies in situations where a coupon settlement also provides for non-coupon relief, such as equitable or injunctive relief.  716 F.3d at 1183; *see also Chaikin*, 2014 WL 1245461 at *4-5 (stating that in class actions that provide for injunctive relief, courts frequently use a lodestar calculation because there is no way to gauge the net value or any percentage of the settlement.)  Like § 1712(a), the language of § 1712(b) is not permissive. *See In re: HP Inkjet Printer Litig*., 716 F.3d at 1183. If class counsel wants to be paid "any fees," and the "recovery of the coupons is not used to determine" those fees (but rather, the fees shall be based only the injunctive relief), the entirety of the payment "shall be" calculated "based upon the amount of time class counsel reasonably expended working on the action," *i.e*., using the loadstar method.  *Id.*

57.    Further, as noted by the Parties at the Final Fairness Hearing, the attorneys' fees here were negotiated only after the terms of the settlement were reached, and the fee award comes directly from BHN, rather than from funds earmarked for the class. Thus, no "portion of the attorney's fee award…is attributable to the award of the coupons."  § 1712 (a).  Where a "portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action."  § 1712 (b)(1); *see*

*Blessing*, 507 Fed. Appx. at 4-5. In other words, under § 1712 (b)(1), the court need not wait until all (or any) coupons have been redeemed to determine the actual value of the settlement when the fees are separate from that value.

58.    At the Final Fairness Hearing, counsel for objector Smith urged the court to rely upon the following three cases to support the argument that Plaintiff's counsel must be paid a contingent amount measured by the redemption value of the coupons offered to and redeemed by class members pursuant to § 1712(a): (1) *Redman*, *supra,* 768 F.3d 622; (2) *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) and (3) *In re: HP Inkjet Printer Litig.*   The court has reviewed each of these cases and finds that objector's counsel's reliance on these cases is misplaced.  As is set forth above, the court disagrees with the reasoning behind these cases, none of which are binding on this court; however, even if they were controlling here, they would not change the outcome of the court's analysis, as all are readily distinguishable from the case at bar.

59.    First, in *Redman*, the court reviewed objections to a settlement agreement – specifically, the calculation of attorney's fees – in which the essential term was the each class member would receive a ten dollar coupon to resolve allegations that the company violated the Fair and Accurate Credit Transactions Act.  The only issue faced by the court was determining the appropriate quantum of monetary damages based on the coupons' value.  But here, unlike in *Redman*,

the more significant relief for the class is the substantial injunctive relief agreed to by the settling defendant that addresses Plaintiff's claims regarding the alleged anti-competitive behavior.  This case is not an "all-coupon" case like *Redman*.  As explained above, when injunctive relief is a component of the settlement, § 1712(c), and the lodestar and multiplier method prescribed by § 1712(b), control the calculation of attorneys' fees.

60.    The *Eubank* case is completely inapposite.  In *Eubank*, the court reversed the entry of approval of a "scandalous" class action settlement because, among other reasons, (1) the agreement contained one-sided terms; (2) lead class counsel and class representative had conflicts of interest; (3) a "questionable" provision of the settlement advanced two million dollars in attorney's fees to lead counsel; (4) another provision made any reduction in the $11 million attorney's fee award revert to the manufacturer, rather than the class fund; and (5) the class could not expect to receive more than $8.5 million from the settlement in comparison to the $90 million value of the case.  *Eubank*, 753 F.3d at 718.  None of these issues is present here.  Simply put, *Eubank* provides no support whatsoever for objector Smith's contention that class counsel must be paid a contingent amount measured by the redemption value of the coupons offered to and redeemed by class members pursuant to § 1712(a).

61.     Finally, as is discussed above, in *In re: HP Inkjet*, the Ninth Circuit adopted a rule that requires the district court to calculate the redemption value of coupons before awarding any attorney's fees that were "attributable to" the coupon relief, even in settlements with "mixed relief."  716 F.3d at 1186. Or, in other words, the court concluded that CAFA only permits district courts to award lodestar fees when those fees are "not based on the value of the coupons."  Even if this court were to adopt such a rule, it could still award Class Counsel an attorneys' fee award based on the lodestar and multiplier method, pursuant to §§ 1712(c) (2) and 1712(b).  The value of the injunctive relief in this case alone justifies the requested fee, as discussed below.

62.     Finally, Smith's suggestion that the "clear sailing" provision in the Settlement Agreement, whereby BHN agrees not to challenge Class Counsel's fee request, raises the specter of a "risk that class counsel may have bargained away valuable relief for the class 'in exchange for red carpet treatment on fees," *see* doc. 95 at 7 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524-25 (1st Cir. 1991)), is unavailing. As is set forth in the Whatley Declaration, attorneys' fees were not negotiated until after the Parties had fully negotiated and agreed upon the relief to the Settlement Class. (Whatley Decl. ¶ 19). Thus, the notion that "every dollar that goes to class counsel is a dollar less that is available to compensate class members," doc. 95 at 6, is wrong. In any event, however, the

court finds that the fee request here withstands the heightened scrutiny that Smith urges the court to impose, as is set forth herein.

63.    As is set forth below, an analysis pursuant to the lodestar/multiplier method clearly indicates that the requested fee is reasonable. Accordingly, Smith's challenge to the requested fee award is OVERRULED.

### 5.    The Stage of the Proceedings and the Amount of Discovery Completed

64.    The next *Bennett* factor, the stage of the proceedings and the amount of discovery completed, also supports final approval here. Although full-blown merits discovery has not been taken in this case, class discovery was extensive, and even before filing the complaint, Plaintiff's counsel conducted an extensive economic and factual investigation and evaluation of the claims asserted. This is not a case in which a complaint has been filed and the parties have rushed to a settlement. Thus, all Parties had a keen grasp of the issues, the factual underpinnings of the claims and defenses herein, and the measure of the evidence supporting those claims and defenses. There are no obvious issues that require further discovery to allow for an informed settlement. The parties have recognized each other's positions regarding disputed points of law, and have entered into the Settlement based upon an appreciation of the risks of continued litigation. This is more than enough to support a conclusion that the settlement is fair and reasonable. *See Cotton v. Hinton,* 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming approval of

settlement with little formal discovery); *Mashburn v. Nat'l Healthcare Inc.,* 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged; only a reasonable amount of discovery is required to determine the fairness of the settlement).

65.    Thus, the court finds that the Settlement is fair, reasonable, and adequate to the Settlement Class.

66.    On the basis of the foregoing findings and the submissions and proceedings referred to above, the court finds and **CONCLUDES**:

## II.    **FINAL APPROVAL OF THE SETTLEMENT**

67.    All members of the Settlement Class (as permanently certified below) shall be subject to all of the provisions of the Settlement Agreement and this Final Approval Order.

68.    The Settlement is hereby approved as fair, reasonable, adequate and in the best interests of the Settlement Class in light of the complexity, expense, and likely duration of the litigation, and the risks involved in establishing liability, damages, and in maintaining a class action.   The court further finds that the requirements of due process and Rule 23 have been satisfied.

69.    Each and every Settlement Class member who has not opted out is bound by this Final Approval Order, the terms of the Settlement and the releases set forth below.

## III.   CERTIFICATION OF SETTLEMENT CLASS REPRESENTATIVE AND CLASS COUNSEL

70.    Plaintiff Karen Parsons is hereby certified as Settlement Class Representative, and the law firms of Whatley Kallas, LLP; Wiggins, Childs, Quinn and Pantazis, LLC; and Quinn, Connor, Weaver, Davies & Rouco as Class Counsel ("Class Counsel") are appointed counsel to the Settlement Class.  The court concludes that Class Counsel and the Settlement Class Representative have fairly and adequately represented the Settlement Class with respect to the Settlement.

## IV.   APPROVAL OF THE APPLICATIONS FOR ATTORNEYS' FEES AND EXPENSES

71.    The court has reviewed the application for an award of fees and expenses submitted by Class Counsel and the declarations, exhibits, memorandum of law and other materials submitted in support of that application.  On the basis of its review of the foregoing and on the presentations and other proceedings at the Final Fairness Hearing, the court hereby awards fees and expenses to Class Counsel.

72.    In this case, as the Sherman Antitrust Act authorizes fee-shifting, Defendant and Class Counsel have agreed to an amount to be paid directly from Defendant to Class Counsel, without having any impact whatsoever on the relief to

the Settlement Class. Defendant and Plaintiff have independently negotiated a combined fee and expense award of $3,700,000.00 for Class Counsel.

73.    Since expenses of $571,809.70 come out of this award, the requested fee award is $3,128,190.30.

74.    The court finds that either a percentage-of-recovery analysis or a lodestar/multiplier analysis provides an independent basis supporting the requested fee as reasonable.

## A.    A Percentage-of-Recovery Analysis Shows that the Requested Fee Is Reasonable.

75.    The requested fee award here is only approximately 3.4% of the funds available to the Settlement Class. The requested fee is well *below* the range that the Eleventh Circuit has authorized to come out of a common fund, and in fact does not reduce the funds available to the Settlement Class at all. As the court observed in *Allapattah Servs. Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185, 1211 (S.D. Fla. 2006), countless courts within and outside of this Circuit have approved fee awards of 25% to 35.5% in class action settlements. *Id.* (collecting cases).

76.    In non-coupon-settlement cases such as this one, the Eleventh Circuit has made clear that the value of the economic relief to the class is calculated based upon the amount made *available* to the class, not the total amount actually *claimed* by class members. In *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768 (11th Cir. 1991), the Eleventh Circuit rejected an argument that an attorneys' fee award based

on a percentage of a "claims-made" fund was inappropriate because funds not claimed and disbursed to class members reverted to the defendant. *Id.* at 771. The concept that the attorneys' fee is to be computed as a percentage of the available fund as a whole has been followed throughout the Eleventh Circuit. *See, e.g., Cifuentes v. Regions Bank*, 2014 WL 1153772 *7 (S.D. Fla. March 20, 2014) (citing *Camden I* ("the law is well established that a litigant or lawyer who recovers a common fund… is entitled to a reasonable attorneys' fee from the fund as a whole"); *Hall v. Bank of America*, 2014 WL 7184039 *9 (S.D. Fla. December 17, 2014) (citing *Waters v. International Precious Metals Corp.,* 190 F.3d 1291, 1295-96 (11th Cir. 1999)) ("The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower."). Moreover, the *Waters* court stated that "no case has held that a district court must consider only the actual payout in determining attorney's fees." 190 F.3d at 1295.

77.    Accordingly, in this case, the value of the economic relief to the class is calculated based on what each type of Settlement Class Member (current or former digital cable customers) can recover, multiplied by the number of Settlement Class Members who can recover it. Current digital cable customers are entitled to a $30 account credit. BHN estimates that there are approximately 1,815,492 current digital cable television subscribers. (Stuart Decl. ¶ 3). Thus, the value of this portion of the economic relief to the Settlement Class is $54,464,760.

Former digital cable customers are entitled to a cash payment of $20. BHN estimates that there are approximately 1,835,000 former digital cable television subscribers across the class period. (*Id.* ¶ 4). Thus, the value of this portion of the economic relief to the Settlement Class is approximately $36,700,000. The total value of the economic relief to the class from the Settlement is therefore approximately $91,164,760. This is a very significant recovery for the Settlement Class.

78.     Further, injunctive relief offered by the Settlement puts an end to BHN's requiring its digital cable customers to rent set-top boxes from BHN. (Settlement Agreement ¶ 7b). The injunctive relief is complete relief in this case, and its value is sufficient to justify an attorneys' fee award irrespective of the monetary value of the compensatory relief. The term of the Settlement Agreement runs through September 1, 2018 (*id.* ¶ 7a), approximately 3.33 years. At the low end of Plaintiff's original damage estimate ($1 per month per customer), the injunctive relief is valued at $12.00 per year, or approximately $40 over the term of the Settlement Agreement. If this number is multiplied by the 1,815,492 current customers who stand to benefit from the injunctive relief, the total value of that injunctive relief is $72,619,680.00. The requested fee award is approximately 4% of that value. Not one Settlement Class Member, including the objectors, has objected to the injunctive relief provided by the Settlement; indeed, Smith's

counsel expressly stated at the Final Fairness Hearing that Smith did not object to that portion of the relief provided by the Settlement.

79.     Added to compensatory relief totaling approximately $91,164,760, the value of the injunctive relief here brings the total value of the Settlement to $163,784,440. The requested attorneys' fee award of $3,128,190.30 is approximately 2% of that value.

80.     Even without the injunctive relief, the requested fee award is approximately 3.4% of the retrospective/compensatory relief the Settlement provides for the Settlement Class, and thus the court finds that the requested fee is reasonable.

## B.     A Lodestar/Multiplier Analysis Shows that the Requested Fee Is Reasonable.

81.     An alternative to the percentage method, the lodestar/multiplier approach, is used in this Circuit as a cross-check on the common fund method for determining the reasonableness of attorneys' fee awards.

82.     Moreover, as is discussed above, even if this were a coupon settlement, Class Counsel would be entitled to seek a fee award based on the lodestar with multiplier method, pursuant to CAFA 28 U.S.C. § 1712 (b) (1) and (2) and (c) (2).

83.     The court finds that the lodestar/multiplier method provides an independent justification for the fee requested here, irrespective of the valuation of the Settlement.

84.     Here, Class Counsel has devoted more than 5,922 hours to this matter, with a "retail" value exceeding $2,700,265.00. The hourly rates charged are the usual and customary rates charged for each individual in all of Class Counsel's cases. The court finds that the hourly rates charged here are reasonable and are in line with rates used by attorneys in this District with comparable experience engaging in comparable complex consumer litigation.

85.     In complex cases such as this one, courts routinely approve multipliers of three or more. *See, e.g.*, *Behrens*, 118 F.R.D. at 549 ("In cases as complex as this, with risks of establishing liability as great as in this case, and with legal representation as fine as it was here, a lodestar multiple of three appears to be average.") (collecting cases with multipliers ranging from a low of 2.26 to a high of 4.5); Stuart J. Logan, Dr. Jack Moshman & Beverly C. Moore, Jr., Attorney Fee Awards In Common Fund Class Actions, 24 Class Action Reports 167, 197 (Mar.-Apr. 2003) (average multiplier found to be reasonable was 3.89); *Weiss v. Mercedes-Benz of N. Amer., Inc.*, 899 F. Supp. 1297 (D.N.J.1995) (multiple of 9.3 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, Fed. Sec. L. Rep. (CCH) ¶ 96,984 (S.D.N.Y.1992) (multiple of 6 times lodestar); *Cosgrove v.*

*Sullivan*, 759 F.Supp. 166 (S.D.N.Y.1991) (multiple of 8.74); *Glendora Comm. Redevelopment Agency v. Demeter*, 155 Cal.App.3d 465, 202 Cal.Rptr. 389 (Cal.Ct.App.1984) (multiple of 12 times lodestar).

86.  Accordingly, the multiplier here, 1.158, is well below the range of commonly-approved multipliers, and the court finds that the multiplier and the fee request are reasonable.

87.  Thus, the requested award of attorneys' fees is hereby APPROVED.

88.  Class Counsel have incurred unreimbursed out-of-pocket expenses of $571,703.97 in successfully prosecuting and settling this Action.   Plaintiffs' counsel are entitled to be reimbursed for their reasonable expenses when they create a benefit for all class members. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1036 (S.D. Ohio 2001) ("Counsel contributed to the creation of the Settlement Fund, and accordingly, are entitled to receive a reimbursement of their out-of-pocket expenses in the [requested] amount"); *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (holding that plaintiffs' counsel was entitled to the full recovery of their expenses from the common fund).

89.  The court hereby finds that all of Class Counsel's expenses were properly incurred and are reimbursable, and therefore the requested award of expenses is hereby APPROVED.

## V.  APPROVAL OF THE REQUESTED INCENTIVE AWARD TO PLAINTIFF

90.     Plaintiff has also requested approval of the incentive award to Plaintiff that the Parties have agreed to, in the amount of $5,000.00. BHN has agreed to make this payment *in addition to* the relief to the Settlement Class (*see* Settlement Agreement ¶ 14). While objector Smith argues that the incentive award is "excessive," doc. 95 at 11, in truth the amount requested here is comparable, and even significantly below, amounts that have been awarded in similar cases. The *Allapattah Services* court cited numerous cases in which awards of $25,000, $20,000, $10,000, and $5,000 have been approved "to compensate named plaintiffs for the services they provided and the risks they incurred," as Plaintiff here has done. 454 F. Supp. 2d at 1219; *see also Pinto,* 513 F. Supp. 2d at 1344 (approving incentive awards of $7,500 for each of three class representatives). While Smith points out, based on a 2005 study, that "the average incentive award was 0.16% of the class recovery," doc. 11, the award here is only *.005%* of the financial relief available to the Settlement Class, and thus cannot be considered "excessive."

91.     The court finds that the incentive award requested is justified in light of Plaintiff's willingness to devote her time and energy to prosecuting a representative action that has gone on for almost six years, and is reasonable in consideration of the overall benefit conferred to Settlement Class Members. Accordingly, the requested Incentive Award for Plaintiff is hereby APPROVED.

## VI.   **FINAL JUDGMENT**

92.   By this Final Approval Order, and the Judgment entered pursuant to it, Plaintiff and each Settlement Class Member who has not validly excluded himself or herself from the Settlement Class shall have fully, finally, and forever released, relinquished and discharged all Section 1 Sherman Act tying claims and analogous state law claims of all Settlement Class Members, and any other claims that could have been brought, whether pleaded or not pleaded, based on or arising out of the facts set forth in the First Amended Complaint.

93.   Without affecting the finality of this Judgment and pursuant to Fed. R. Civ. P. 23, this court retains continuing jurisdiction over this Settlement, including the administration, consummation, and enforcement of the Settlement Agreement. In addition, without affecting the finality of this Judgment, this court retains jurisdiction over the Parties and each member of the Settlement Class, who are deemed to have submitted to the exclusive jurisdiction of this court for any suit, action, proceeding or dispute arising out of or relating to this Order and the terms of the Settlement Agreement.

94.   This court finds that there is no reason for delay, and directs the Clerk to enter judgment in accordance with the terms of this Order and Judgment as of the date of this Order and Judgment.

**DONE** the 5th day of February, 2015.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE